RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0365p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

MICHAEL JONES,

*Defendant-Appellant*.

┐
│
│
│
> No. 20-3701
│
│
│
┘

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 3:18-cr-00299-5—Jack Zouhary, District Judge.

Decided and Filed: November 20, 2020

Before: MOORE, COOK, and STRANCH, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Matthew Ahn, FEDERAL PUBLIC DEFENDER'S OFFICE, Toledo, Ohio, for
Appellant. Alissa M. Sterling, UNITED STATES ATTORNEY'S OFFICE, Toledo, Ohio, for
Appellee.

MOORE, J., delivered the opinion of the court in which STRANCH, J., joined. COOK
(pp. 23–24), delivered a separate opinion concurring in the judgment.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge. The "compassionate release" provision of
18 U.S.C. § 3582 allows district courts to reduce the sentences of incarcerated persons in
"extraordinary and compelling" circumstances. 18 U.S.C. § 3582(c)(1)(A). For over three

decades, § 3582(c)(1)(A) allowed only the Bureau of Prisons ("BOP") to file motions for compassionate release. Because the BOP rarely did so, few compassionate release cases reached the federal courts. This drought of compassion concluded in 2020, when the forces of law and nature collided. The First Step Act of 2018's provision allowing incarcerated persons to file their own § 3582(c)(1)(A) motions coupled with COVID-19's pernicious presence in federal prisons triggered a massive upswing in imprisoned persons seeking compassionate release; 10,940 persons applied for compassionate release in the first three months of the pandemic alone.[1] Michael Jones is one of these legion petitioners. Jones is serving a ten-year sentence at Federal Correctional Institution Elkton, where one out of every four imprisoned persons has tested positive for COVID-19.[2] In his § 3582(c)(1)(A) motion, Jones's medical ailments—which expose him to COVID-19-related health complications—comprise the crux of his request for a sentence reduction.

The First Step Act and COVID-19 have redefined the compassionate release landscape. Because this court had little opportunity to examine compassionate release before this *annus horribilis*, technical questions regarding § 3582(c)(1)(A)'s requirements and standards of review long went unanswered. Our recent decision in *United States v. Ruffin*, 978 F.3d 1000, No. 20-5748, 2020 WL 6268582 (6th Cir. Oct. 26, 2020), unravels some of these mysteries. In lockstep with *Ruffin*, we hold that sentence-modification decisions pursuant to § 3582(c)(1)(A) embody a three-step inquiry: district courts must "find" both that "extraordinary and compelling reasons

---

[1]*See* Keri Blakinger & Joseph Neff, *Thousands of Sick Federal Prisoners Sought Compassionate Release. 98 Percent Were Denied*, THE MARSHALL PROJECT (Oct. 7, 2020, 6:00 AM), https://www.themarshallproject.org/2020/10/07/thousands-of-sick-federal-prisoners-sought-compassionate-release-98-percent-were-denied (citing data provided by BOP showing that 10,940 federal prisoners applied for compassionate release between March and May 2020). The BOP has not provided data on how many persons have filed for compassionate release since May 2020. *See id.* But the BOP updates its website every day with a running total of "Compassionate Releases / Reduction in Sentences" since the First Step Act's passage in December 2018. *See* FEDERAL BUREAU OF PRISONS, FIRST STEP ACT, https://www.bop.gov/inmates/fsa/index.jsp (last visited Nov. 2, 2020). On November 2, 2020, BOP's website represented that there have been 1,992 grants since December 2018. *Id.* Because the Sentencing Commission has reported that there were twenty-four grants of compassionate release in 2018 and 145 grants in 2019, *see* U.S. SENT'G COMM'N, THE FIRST STEP ACT OF 2018: ONE YEAR OF IMPLEMENTATION (Aug. 2020) at 47 & n.143, we can safely assume that there has been an unprecedented surge in both filings and grants of compassionate release motions in 2020.

[2]*See Wilson v. Williams*, No. 4:20-CV-00794, 2020 WL 2542131, at *3 (N.D. Ohio May 19, 2020) (discussing conditions at Elkton), *preliminary injunction at issue later vacated by Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020). The district judge in the present case referred to FCI Elkton as "one of the least-successful prisons in the fight against COVID-19." R. 202 (Dist. Ct. Op. at 1) (Page ID #1539).

warrant [a sentence] reduction"[3] and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" before considering all relevant sentencing factors listed in 18 U.S.C. § 3553(a). We resolve a debate that we first teed up in *Ruffin*, holding that U.S. Sentencing Guideline § 1B1.13 is not an "applicable" policy statement in cases where incarcerated persons file their own motions in district court for compassionate release. We also hold that the deferential abuse-of-discretion standard requires district courts to supply specific factual reasons for their compassionate release decisions.

Here, the district court found for the sake of argument that an extraordinary and compelling circumstance existed in Jones's case but that the § 3553(a) factors counseled against granting compassionate release. The district judge, however, did not refer to U.S.S.G. § 1B1.13 in rendering its extraordinary-and-compelling finding. Because Jones—not the BOP—filed a motion for compassionate release, the district court did not need to refer to § 1B1.13 in its decision. Further, the district court satisfied its obligation to explain its consideration of the § 3553(a) factors. Thus, we **AFFIRM**.

## I. BACKGROUND

Last year, Jones pleaded guilty to possession with intent to distribute and distribution of cocaine base, R. 135 (Superseding Information), and the district court sentenced him to the mandatory minimum of ten years in prison, R. 189 (Sent'g Hr'g at 12) (Page ID #1391).[4] Jones is serving his sentence at FCI Elkton. R. 190–1 (Pro Se Mot. at 1) (Page ID #1398). In mid-2020, Jones filed a pro se emergency motion and a supplemental motion by counsel seeking

---

[3]If applicable, as an alternative, the court must find at step one that the defendant fulfills the age and sentence demands of § 3582(c)(1)(A)(ii) instead of finding "extraordinary and compelling reasons" exist per § 3582(c)(1)(A)(i). *See* 18 U.S.C. § 3582(c)(1)(A)(ii) ("(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)"). This provision is not relevant in Jones's case and is generally not at issue in the usual compassionate release case involving "extraordinary and compelling reasons." *See* § 3582(c)(1)(A)(i).

[4]"Unfortunately, my hands are tied a bit in this case. Congress has told me that I can sentence you, Mr. Jones, to a minimum of ten years, and so that somewhat cabins our discussion." R. 189 (Sent'g Hr'g at 4) (Page ID #1383).

compassionate release.  R. 190 (Pro Se Mot.); R. 193 (Suppl. Mot.).[5]  Jones asserted that "[t]he outbreak of COVID-19 at Elkton is an extraordinary and compelling circumstance that justifies a reduction in [his] custodial sentence."  R. 193 (Suppl. Mot. at 2) (Page ID #1404).  Jones contended that he exhibited symptoms of COVID-19, "including a dry cough, lack of taste and smell, chills, respiratory trouble, and an intermittent fever," but was not tested until May 22, 2020, *id.*, "weeks after his symptoms began[,]" *id.* at 8 (Page ID #1410).[6]  Three medical factors may expose Jones to a high risk of complications associated with COVID-19:  Jones may have respiratory issues due his exposure to tuberculosis in 2003, *id.* at 10 (Page ID #1412), he is over forty years old, *id.*, and he is obese, R. 202 (Dist. Ct. Op. at 1) (Page ID #1539).  According to Jones, that "inmates at Elkton continue to die[] demonstrat[es] that the medical capabilities of the BOP are leading to otherwise preventable deaths."  R. 193 (Suppl. Mot. at 2) (Page ID #1404).  Accordingly, Jones requested that the district court "reduce his sentence to time served" and that he be placed on supervised release so that he could get the "appropriate diagnosis and treatment that he requires."  *Id.* at 3 (Page ID #1405).

The district court denied Jones's motion.  R. 202 (Dist Ct. Op. at 1) (Page ID #1539).  The court explained that it "may reduce a prisoner's sentence if (1) 'extraordinary and compelling reasons warrant such a reduction' and (2) 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission' [pursuant to] 18 U.S.C. § 3582(c)(1)(A)(i)."  *Id.*  "[A]lso," the district court found that it "must consider the factors listed in 18 U.S.C. § 3553(a) 'to the extent that they are applicable.'"  *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)).  The district court acknowledged Jones's "several arguments for release[,]" including that Jones "is confined at FCI Elkton, one of the least-successful prisons in the fight

---

[5]Per Jones's supplemental memo, Jones seems to have properly exhausted the BOP's administrative procedures before filing his motion with the district court.  R. 193 (Suppl. Mot. at 2) (Page ID #1404).  The Government does not contest exhaustion, so we can proceed with the understanding that Jones satisfied exhaustion here.  *Cf. United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (explaining § 3582(c)(1)(A)'s exhaustion requirements).

[6]At the time that Jones filed his motion, he had not received the results of his COVID-19 test.  R. 193 (Suppl. Mot. at 9) (Page ID #1411).  It later came back negative.  R. 198-5 (Jones COVID-19 Test Result); Appellee Br. at 18.  Of course, Jones's medical ailments could be considered an extraordinary and compelling reason for compassionate release in the scenario where Jones has COVID-19 (because he may suffer from serious long-term health problems and potentially may require treatment that he cannot receive at FCI Elkton), or where Jones does *not* have COVID-19 (because his medical issues put him at risk of contracting the virus).  Given the district judge's silence over the parties' dispute regarding Jones's medical situation, we do not further contemplate this issue.

against COVID-19"; "allegedly faces a high risk of virus-related complications due to obesity and a 2003 bout with tuberculosis"; and "[h]is crime of conviction was a nonviolent drug offense, and he has behaved well during his current incarceration[.]" *Id.* at 1–2 (Page ID #1539–40). "Nevertheless," the district court found, "early release is inappropriate in light of the Section 3553(a) factors." *Id.* at 2 (Page ID #1540). At no point did the district court refer to U.S.S.G. § 1B1.13, the Sentencing Commission's policy statement regarding compassionate release.

On appeal, Jones argues that the district court "abused its discretion in denying Mr. Jones's release based on an improper weighing of the 18 U.S.C. § 3553(a) factors." Appellant's Br. at 2, 6. Further, Jones and the Government take opposing positions on whether "[f]ederal courts have the ability under [U.S.S.G.] § 1B1.13 to consider any extraordinary and compelling reasons for release, notwithstanding Application Note 1." Appellant's Reply Br. at 1; *cf.* Appellee's Br. at 20 ("[T]he relevant policy statement of the Commission is binding on the Court.").[7]

Jones's case raises three queries that are relevant to all compassionate release cases: what are the necessary components of a compassionate release decision; must a district court defer to U.S.S.G. § 1B1.13 in rendering its "extraordinary and compelling circumstance" decision; and what does it take for a district court to satisfy its obligation to explain the factual reasons undergirding its compassionate release decision? To answer these three questions, we start with a short historical review.

---

[7]Jones also argues that the district court's "incorrectly casting its decision on Mr. Jones's sentence as a binary choice" between release and imprisonment constituted an abuse of discretion. Appellant's Br. at 7. Jones contends that "the record does not indicate that the district court considered the possibility of extending Mr. Jones's term of supervised release." *Id.* at 9. Jones is correct that § 3582(c)(1)(A) permits district courts to "reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)[.]" 18 U.S.C. § 3582(c)(1)(A). Jones requested the court "reduce his sentence to time served" in his motion for compassionate release, R. 193 (Suppl. Mot. at 3) (Page ID #1405), and the district court does have discretion to decide that supervised release is the appropriate relief. But we do not read the district court's use of the phrase "early release" as promoting an impermissible dichotomy between prison and freedom.

## II.  THE HISTORY OF COMPASSIONATE RELEASE

We begin with the origin of compassionate release.  In the Sentencing Reform Act of 1984, Congress abolished federal parole and forbade the federal courts from "modify[ing] a term of imprisonment once it has been imposed[.]"  Sentencing Reform Act of 1984, Pub. L. No. 98–473, Title II, ch. 2, § 212(a), 98 Stat. 1837, 1998 (enacting 18 U.S.C. § 3582(c)).  Congress carved out an exception known as compassionate release:  federal courts could reduce a sentence when "warrant[ed]" by "extraordinary and compelling reasons[.]"  18 U.S.C. § 3582(c)(1)(A) (1984).

But two entities—the BOP and the Sentencing Commission—circumscribed the courts' ability to reduce sentences under § 3582(c)(1)(A).  *See id.*  For thirty-four years, only the BOP's Director could file motions for compassionate release.  *See* 18 U.S.C. § 3582(c)(1)(A) (1984) *and* 18 U.S.C. § 3582(c)(1)(A) (2017).  Yet the Director seldom wielded this significant power.  The BOP approved only 6% of 5,400 compassionate release applications received between 2013 and 2017.  *See* Christie Thompson, *Frail, Old and Dying, but Their Only Way Out of Prison Is a Coffin*, N.Y. TIMES (Mar. 7, 2018), https://www.nytimes.com/2018/03/07/us/prisons-compassionate-release-.html (citing data provided by the BOP).  Between 2013 and 2017, 266 persons died in custody waiting for the Director to review their applications, half of whom were serving time for nonviolent fraud or drug crimes.  *Id.*  In 2018, only twenty-four persons were released under § 3582(c)(1)(A).  *See* U.S. SENTENCING COMMISSION, THE FIRST STEP ACT OF 2018: ONE YEAR OF IMPLEMENTATION 47 & n.143 (Aug. 2020).

The Sentencing Reform Act of 1984 also provided that "[t]he [Sentencing] Commission, in promulgating general policy statements regarding the sentencing modification provisions in [18 U.S.C. §] 3582(c)(1)(A) . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."  Sentencing Reform Act of 1984, § 217(a), 98 Stat. at 2023 (enacting 28 U.S.C. § 994(s)).  Ignoring Congress's edict for twenty-two years, the Commission issued its first policy statement regarding compassionate release only in 2006.  *See* U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2006).

Despite the command of Congress in 1984, the 2006 policy statement did not define "extraordinary and compelling reasons." Rather, the statement was little more than an unenlightening repetition. Section 1B1.13(1)(A) parroted the "extraordinary and compelling reasons warrant [a sentence] reduction" language from § 3582(c)(1)(A). § 1B1.13(1)(A) (U.S. Sent'g Comm'n 2006). An application note titled "Application of Subsection (1)(A)" provided: "[a] determination made by the Director of the Bureau of Prisons that a particular case warrants a reduction for extraordinary and compelling reasons shall be considered as such for purposes of subdivision (1)(A)." § 1B1.13 cmt. n.1(A) (U.S. Sent'g Comm'n 2006). The Commission did amend the commentary's application notes in 2007, 2010, 2016, and 2018 to describe an ever-growing list of "circumstances" where "extraordinary and compelling reasons exist." § 1B1.13 cmt. n.1 (U.S. Sent'g Comm'n 2018). But § 1B1.13's main text has never defined—and still does not define—"extraordinary and compelling reasons."

Frustrated with the BOP's conservative approach, a bipartisan coalition in Congress sought to boost grants of compassionate release by reforming § 3582(c)(1)(A)'s procedures in the First Step Act of 2018. *See* 164 Cong. Rec. S7774 (daily ed. Dec. 18, 2018) (statement of Sen. Ben Cardin) ("The bill *expands* compassionate release under the Second Chance Act and *expedites* compassionate release applications.") (emphasis added); 164 Cong. Rec. H10362 (daily ed. Dec. 20, 2018) (statement of Rep. Jerrold Nadler) ("The prison reform provisions of this bill also include a number of very positive changes, such as . . . *improving application* of compassionate release . . . .") (emphasis added); Letter from Brian Schatz et al., U.S. Senators, to Thomas R. Kane, Acting Dir. BOP, and Rod Rosenstein, Deputy Att'y General U.S. Dep't of Justice, (Aug. 3, 2017) (on file with U.S. Senate) (letter sent by several bipartisan co-sponsors of First Step Act stating "[the] BOP needs to take a hard look at *expanding* the use of compassionate release of certain federal prisoners . . . ." and asking "[w]hat actions can BOP take to *increase* the use of compassionate release?") (emphasis added). Section 603(b) of the First Step Act—titled "Increasing the Use and Transparency of Compassionate Release"—ousted the BOP from its preclusive gatekeeper position and amended 18 U.S.C. § 3582(c)(1)(A). *See* First Step Act of 2018, Pub. L. 115-391, Title VI, § 603(b), 132 Stat. 5194, 5239. Now, an imprisoned person may file a motion for compassionate release after (1) exhausting the BOP's administrative process; or (2) thirty days after the warden received the compassionate release

request—whichever is earlier. *See id.*; *see also* 18 U.S.C. § 3582(c)(1)(A) (2020). Section 603(b) of the First Step Act also added 18 U.S.C. § 3582(d), regarding notification and reporting requirements imposed on the BOP. *See* First Step Act of 2018, § 603(b), 132 Stat. at 5239–41.

Data indicate that the First Step Act's tearing down the BOP's levee between imprisoned persons and the federal courts is already achieving Congress's desired effect. In 2019, federal courts granted 145 compassionate release motions; incarcerated individuals filed ninety-six (67.1%) of the motions, and the BOP filed the other forty-seven (32.9%). *See* U.S. SENTENCING COMMISSION, *supra* note 1, at 47. We are now well into the second year of the First Step Act's implementation, a year defined by COVID-19. The BOP denied or ignored more than 98% of compassionate release requests in the first three months of the pandemic. *See* Blakinger & Neff, *supra* note 1 (citing data provided by the BOP). Now unhindered by the BOP's procedural bars, incarcerated persons' filing and federal courts' granting § 3582(c)(1)(A) motions have surged this year. 10,940 federal prisoners applied for compassionate release between March and May 2020, *id.,* and federal courts have compassionately released an estimated 1,700 persons in 2020 so far, *compare* U.S. SENTENCING COMMISSION, *supra* note 1, at 47 (twenty-four grants of compassionate release in 2018; 145 grants in 2019), *with* FEDERAL BUREAU OF PRISONS, *supra* note 1 (1,992 grants since December 2018).

### III. Section 3582(c)(1)(A)'s Three-Step Test

With this historical backdrop in mind, we turn to the pertinent statutory text. After the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now provides:

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
>> (A) ***the court***, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, ***may reduce the term of imprisonment*** (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term

of imprisonment), ***after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that***—

> (i) ***extraordinary and compelling reasons warrant such a reduction***; or

> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

***and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .***

(emphasis added).

From the plain text, we can glean the necessary ingredients for a district court's compassionate release analysis. Congress's use of "may" in § 3582(c)(1)(A) dictates that the compassionate release decision is discretionary, not mandatory. *Cf. United States v. Curry*, 606 F.3d 323, 330 (6th Cir. 2010) (concluding that similar use of "may" in § 3582(c)(2) "does not create a *right* to a reduced sentence"). Three clauses in § 3582(c)(1)(A) contain "substantive requirements" for a court's compassionate release decision: (1) "find[ing]" extraordinary and compelling reasons merit a sentence reduction;**[8]** (2) "find[ing]" that the reduction is consistent with "applicable" Sentencing Commission policy statements; and (3) "considering" the "applicable" § 3553(a) factors. *Ruffin*, 978 F.3d 1000, 2020 WL 6268582, at *3–4 (quoting § 3582(c)(1)(A)).

But due to § 3582(c)(1)(A)'s confusing phrasing and oddly placed commas, the sequence in which courts must fulfill these statutory requirements and the relationship between the three clauses are not readily apparent. In *Ruffin*, we determined that district courts must engage in these three inquiries in the sequence listed above, i.e., a district court must make the two requisite "find[ings]" before weighing the applicable § 3553(a) factors. *See id.* at *3–4.**[9]**

---

**[8]**Or, again, that the requirements of § 3582(c)(1)(A)(ii) are met.

**[9]**"Before reducing a sentence, the court initially must 'find[]' that 'extraordinary and compelling reasons warrant such a reduction[.]' . . . [T]he court next must 'find[]' 'that such a reduction is consistent with applicable

Supreme Court precedent confirms that the order of analysis that we identified in *Ruffin* is correct.

In *Dillon v. United States*, 560 U.S. 817 (2010), the Court considered the constitutional and practical implications of sentencing decisions pursuant to 18 U.S.C. § 3582(c)(2), the compassionate release provision's neighbor. Section 3582(c)(2) states:

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> . . .
>
> (2) in the case of a *defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)*, upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, *the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable*, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2) (emphasis added). The *Dillon* Court held that proceedings pursuant to § 3582(c)(2) were "sentence-modification"—and not resentencing—proceedings. *Dillon*, 560 U.S. at 830. ("[T]he sentence-modification proceedings authorized by § 3582(c)(2) are readily distinguishable from other sentencing proceedings."). The *Dillon* Court's holding turned largely on the text of the provision:

> Section 3582(c)(2) instructs a district court to "conside[r] the factors set forth in section 3553(a) to the extent that they are applicable," but it authorizes a reduction on that basis only "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"—namely, § 1B1.10. The statute thus establishes a two-step inquiry. A court must first determine that a reduction is consistent with § 1B1.10 before it may consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in § 3553(a). . . . Because reference to § 3553(a) is appropriate only at the second step of this circumscribed inquiry, it cannot serve to transform the proceedings under § 3582(c)(2) into plenary resentencing proceedings.

---

policy statements issued by the Sentencing Commission[.]' . . . Even if a district court finds that extraordinary and compelling reasons exist and that a sentence reduction comports with § 1B1.13, the court may not grant the reduction before 'considering the factors set forth in section 3553(a) to the extent that they are applicable[.]'" *Ruffin*, 978 F.3d 1000, 2020 WL 6268582, at *3–4.

*Id.* at 826–27 (first alteration in original); *see also United States v. Thompson*, 714 F.3d 946, 948–49 (6th Cir. 2013) (applying two-step inquiry from *Dillon*); *United States v. Webb*, 760 F.3d 513, 518 (6th Cir. 2014) (same).

Sections 3582(c)(1)'s and (c)(2)'s parallel language and structure[10] compel us to conclude that compassionate release hearings are sentence-modification proceedings and that courts considering motions filed under § 3582(c)(1) must follow a *Dillon*-style test. *See Dillon*, 560 U.S. at 829–30 (reasoning that "requir[ing] courts to treat the [Sentencing] Guidelines differently in similar proceedings[] lead[s] potentially to unfair results and considerable administrative challenges").[11] The three-step § 3582(c)(1)(A) test is as follows. At step one, a court must "find[]" whether "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i).[12] At step two, a court must "find[]" whether "such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A) (emphasis added). The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. *See* U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018). Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Dillon*, 560 U.S. at 827.[13] At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction

---

[10]There is one substantive difference between § 3582(c)(1)(A) and (c)(2). *Compare* 18 U.S.C. § 3582(c)(1)(A) (requiring district courts to find *that extraordinary and compelling reasons warrant a sentence reduction* and that the reduced sentence is consistent with applicable Sentencing Commission policy statements), *with id.* § 3582(c)(2) (requiring that courts find *that the defendant was sentenced to a term of imprisonment based on a sentencing range that the Commission subsequently lowered per 28 U.S.C. § 994(o)* and that the reduced sentence is consistent with applicable Sentencing Commission policy statements). But the subsections' relevant portions are otherwise indistinguishable.

[11]We have previously held that "sentence modifications under the First Step Act and 18 U.S.C. § 3582(c)(1)(B) [are] analogous to sentence modifications based on Sentencing Guideline reductions under § 3582(c)(2)[.]" *United States v. Smith*, 958 F.3d 494, 498 (6th Cir. 2020) (citing *Dillon*, 560 U.S. at 826). This bolsters our determination that we should regard reductions under § 3582(c)(1)(A) as sentence modifications per *Dillon*.

[12]Or, alternatively, whether the defendant fulfills the requirements of § 3582(c)(1)(A)(ii).

[13]We explain why the current version of U.S.S.G. § 1B1.13 is no longer "applicable" after the passage of the First Step Act in § IV, *infra*.

authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Id.*

Here, the district judge assumed for the sake of argument that extraordinary and compelling reasons existed in Jones's case and then proceeded to weigh several § 3553(a) factors. R. 202 (Dist. Ct. Op. at 1–2) (Page ID #1539–40).**14** But the judge did not refer to U.S.S.G. § 1B1.13 in his discussion of extraordinary-and-compelling finding; by doing so, the court skipped the second step. The question thus becomes: did the district court improperly refuse to consider § 1B1.13 per the second step of § 3582(c)(1)(A)'s test? As we now explain, § 1B1.13 does not "appl[y]" to cases where an imprisoned person files a motion for compassionate release. Thus, the judge's omission of reference to § 1B1.13 was proper.

### IV. U.S. SENTENCING GUIDELINE § 1B1.13

To understand our second holding—that U.S.S.G. § 1B1.13 is not an "applicable" policy statement when an imprisoned person files a motion for compassionate release—a brief recap of the Sentencing Commission's role in the compassionate release process is merited. The Sentencing Commission helps determine which "extraordinary and compelling reasons" warrant compassionate release. In 28 U.S.C. § 994(t),**15** Congress delegated to the Sentencing Commission the responsibility of "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples" by "promulgating general policy statements regarding the sentencing modification provisions in [§] 3582(c)(1)(A)[.]"**16** And at steps one and two of the

---

**14**We read the district court's opinion as an assumption that extraordinary and compelling reasons exist for the sake of argument: "He is confined at FCI Elkton, one of the least-successful prisons in the fight against COVID-19. Jones allegedly faces a high risk of virus-related complications due to obesity and a 2003 bout with tuberculosis. His crime of conviction was a nonviolent drug offense, and he has behaved well during his current incarceration. *Nevertheless*, early release is inappropriate in light of the Section 3553(a) factors.") R. 202 (Dist. Ct. Op. at 1–2) (Page ID #1539–40) (emphasis added) (citations omitted). The judge could have been more clear that his analysis pertained to the "extraordinary and compelling circumstance" inquiry and not the weighing of the § 3553(a) factors, but—as we explain in § V, *infra*—we generously read the district court's reasoning under the abuse-of-discretion standard.

**15**This originally appeared as 28 U.S.C. § 994(s) under the Sentencing Reform Act of 1984. *See* Sentencing Reform Act of 1984, § 217(a), 98 Stat. at 2023.

**16**Congress's only other guidance is that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

§ 3582(c)(1)(A) inquiry, district courts must find both that "extraordinary and compelling reasons warrant [a sentence] reduction" and "that such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission." § 3582(c)(1)(A) (emphasis added). The Sentencing Commission's policy statement on the "[r]eduction in [t]erm of [i]mprisonment [u]nder 18 U.S.C. § 3582(c)(1)(A)" is found at U.S.S.G. § 1B1.13, but the Commission has not updated § 1B1.13 since the First Step Act's passage in December 2018. *See* U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018).

Thus, a question arises: given the First Step Act's procedural reforms to compassionate release, is § 1B1.13 still an applicable—"that is, 'relevant' or 'appropriate,'" *Ruffin*, 978 F.3d 1000, 2020 WL 6268582, at \*6 (citation omitted)—policy statement for the purposes of the second § 3582(c)(1)(A) inquiry? We pondered this question in *Ruffin*, where we acknowledged that this conundrum "has sharply divided the courts." *Id.* at \*5. We opted then not to "pick a side in th[e] debate" over § 1B1.13's applicability. *Id.* at \*7. But, unlike the district court in *Ruffin*, the judge in Jones's case did not reference § 1B1.13 at all in deciding whether "extraordinary and compelling" circumstances existed. Thus, we can abstain no longer. We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 "inapplicable" to cases where an imprisoned person files a motion for compassionate release. *See United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020).[17] Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an "extraordinary and compelling" reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion.

Examining the four corners of § 1B1.13 alone, it becomes immediately apparent that the policy statement does not wholly survive the First Step Act's promulgation. The first sentence of § 1B.13 predicates the entire policy statement on the Director of the BOP's filing a motion for compassionate release. *See* U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018) ("*Upon motion of*

---

[17]Because Jones, not the BOP, filed a motion for compassionate release, we do not decide whether § 1B1.13 is an "applicable" policy statement in cases where the BOP files motions for compassionate release. Like the Second Circuit, we decide this question only with regard to cases where an imprisoned person files a § 3582(c)(1)(A) motion. *See Brooker*, 976 F.3d at 235–36.

*the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A)*, the court may reduce a term of imprisonment . . . .") (emphasis added). The commentary's fourth application note—titled "Motion by the Director of the Bureau of Prisons"—similarly explicates that "[a] reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A)." § 1B1.13 cmt. n.4. Again, the main text of § 1B1.13 does not define "extraordinary and compelling." § 1B1.13(1)(A). Instead, the guideline commentary's first application note outlines "circumstances" where "extraordinary and compelling reasons exist[.]" § 1B1.13 cmt. n.1. The last of these circumstances is a catch-all provision that still refers to the Director of the BOP as the absolute arbiter of "extraordinary and compelling." § 1B1.13 cmt. n.1(D) ("*As determined by the Director of the Bureau of Prisons*, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).") (emphasis added). In short, the policy statement's language does not reflect the First Step Act's procedural reforms to compassionate release; "though motions by the BOP still remain under the First Step Act, they are no longer exclusive[.]" *Brooker*, 976 F.3d at 235. Thus, "we read the Guideline as surviving [the First Step Act], but now applying only to those motions that the BOP has made." *Id.* at 235–36.

Congressional intent further dissuades us from enforcing the black letter of Application Note 1's catch-all provision as written, which limits district courts to "extraordinary and compelling" reasons that the BOP has defined. Again, the First Step Act's main co-sponsors were displeased that a mere trickle of compassionate releases occurred under the BOP's supervision. *See* 2017 Letter from Senator Brian Schatz et al., *supra*. In the First Step Act, Congress sought to "expand[] compassionate release[,]" 164 Cong. Rec. S7774 (daily ed. Dec. 18, 2018), "expedite[] compassionate release applications," *id.*, "improve[] application of compassionate release[,]" 164 Cong. Rec. H10362 (daily ed. Dec. 20, 2018), and "increase the use of compassionate release[,]" 2017 Letter from Senator Brian Schatz et al., *supra*. Section 603(b)'s title itself speaks volumes about Congress's intent: "Increasing the Use and Transparency of Compassionate Release." First Step Act of 2018, § 603(b), 132 Stat. at 5239. "After watching decades of the BOP Director's failure to bring any significant number of compassionate release motions before the courts, Congress allowed [persons] seeking

compassionate release to avoid BOP" and "made the courts the decision maker as to compassionate release." *Brooker*, 976 F.3d at 236. It would make little sense for the courts to operate as if the BOP remains the sole gatekeeper of compassionate release, which would reflect a bygone era that Congress intentionally amended in the First Step Act.

We are also attentive to the Sentencing Commission's careful composition of § 1B1.13's Application Note 1. Concerned with "two reports issued by the Department of Justice Office of the Inspector General that are critical of the Bureau of Prisons' implementation of its compassionate release program[,]" the Commission "conducted an in-depth review of" compassionate release. *See* U.S.S.G. supp. to app. C, amendment 799 (U.S. SENT'G COMM'N NOV. 1, 2016). This review included "consideration of Bureau of Prisons data" and holding a public hearing in 2016 on the subject. *Id.* Recognizing the "need to broaden the criteria for eligibility, to add guidance to the medical criteria, and to remove other administrative hurdles that limit the availability of compassionate release for otherwise eligible defendants[,]" the Sentencing Commission "broaden[ed]" its "guidance on what should be considered 'extraordinary and compelling reasons' for compassionate release" in its 2016 amendments to Application Note 1. *Id.*[18] Thus, enforcing the as-written catch-all provision both contravenes Congress's motivation for reforming compassionate release in the First Step Act and ignores the Sentencing Commission's grounds for augmenting § 1B1.13's application notes in 2016.[19]

---

[18]Reading Application Note 1 to confine "extraordinary and compelling circumstances" to the three circumstances listed in § 1B1.13 cmt. n.1(A)–(C) or to situations that the Director of the BOP determines exists (per § 1B1.13 cmt. n.1(D)) risks contradicting 28 U.S.C. § 994(t) and raises a whole host of administrative-law concerns. *Ruffin*, 978 F.3d 1000, 2020 WL 6268582, at *6 (acknowledging that "courts have read basic administrative-law principles as cutting both ways" on the question of whether courts must defer to § 3582(c)(1)(A)). Section 994(t) commands the Sentencing Commission to provide a "list of specific examples" of "what should be considered extraordinary and compelling circumstances." We do not read § 994(t)'s text as allowing the Sentencing Commission to prescribe an *exhaustive* list of examples of extraordinary and compelling reasons. Because the Government appears to concede that § 1B1.13 cmt. n.1 does not provide a circumscribed list of "extraordinary and compelling" reasons, we need not elaborate this point further. Appellee's Br. at 20 ("In Application Note 1 to the policy statement, the Commission identifies the 'extraordinary and compelling reasons' that *may* justify compassionate release.") (emphasis added).

[19]Because the parties do not raise the issue of severability in their briefs and because we merely limit the contexts in which § 1B1.13 applies without invalidating any part of the policy statement, severability is not at issue. But even if we were to apply traditional principles of severability, there would be no change in outcome. *See Brooker*, 976 F.3d at 236. Severability is a question of Congressional intent. *See Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 685 (1987) ("The more relevant inquiry in evaluating severability is whether the statute will function in a manner consistent with the intent of Congress."). As we explained, *supra*, Congress clearly intended to relieve

By following the Second Circuit's lead, we weave together three compatible aspirations: preserving as much of § 1B1.13 that can be saved, adhering to Congress's intent, and respecting the Sentencing Commission's thoughtful authorship of § 1B1.13's commentary.[20] In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define "extraordinary and compelling" without consulting the policy statement § 1B1.13.[21] Thus, the district judge in Jones's case permissibly assumed for the sake of argument that extraordinary and compelling circumstances existed without reference to the policy statement § 1B1.13.

## V. DISTRICT COURTS' OBLIGATION TO EXPLAIN

We now consider whether the district court properly weighed the 18 U.S.C. § 3553(a) factors. *Compare* Appellant's Br. at 7–9, *with* Appellee's Br. at 12–19. This question implicates a broader issue that we spoke to in *Ruffin*—district courts' obligations to explain their factual reasons when issuing compassionate release decisions. *See Ruffin*, 2020 WL 6268582, at *7–8.

We review a district court's denial of compassionate release for abuse of discretion. *See id.* at *4; *United States v. Keefer*, — F. App'x —, No. 19-4148, 2020 WL 6112795, at *3 (6th Cir. Oct. 16, 2020); *United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) (order).[22] The abuse-of-discretion standard is "deferential," *Gall v. United States*, 552 U.S. 38, 41 (2007),

---

the BOP of its lone gatekeeper status. Thus, like the Second Circuit, we would sever § 1B1.13's commentary in a manner that would grant district courts a catch-all provision. This is essentially same result as our holding that § 1B1.13 is not "applicable" when incarcerated persons file motions for compassionate release.

[20]It merits noting that the Sentencing Commission is currently two short of a voting quorum. *Brooker*, 976 F.3d at 234; *compare* 28 U.S.C. § 991(a) (establishing that the "Sentencing Commission [] shall consist of seven voting members and one nonvoting member"), *and* U.S. SENT'G COMM'N, ABOUT THE COMMISSIONERS, https://www.ussc.gov/commissioners (last visited Nov. 2, 2020) (listing two commissioners and two ex officio nonvoting commissioners), *with* 28 U.S.C. 994(a) (requiring an "affirmative vote of at least four members of the Commission" to promulgate guidelines and policy statements).

[21]Again, the Commission failed to promulgate any policy statement regarding motions submitted under § 3582(c)(1) for twenty-two years, yet district courts were perfectly capable of rendering decisions in compassionate release cases. The Commission finally issued a policy statement in 2006, but the main text of § 1B1.13 has never defined "extraordinary and compelling." The current version of § 1B1.13's main text merely parrots the statutory text of § 3582(c)(1)(A)(i) verbatim; further elaboration can be found only in the policy statement's application notes. This again raises sundry administrative-law questions about deference that we need not reach here.

[22]Our recent holding in *Ruffin* that the abuse-of-discretion standard is appropriate for compassionate release cases aligns with two other circuits' decisions. *See United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020); *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).

but "'discretion' does not mean 'whim.'" *Keefer*, — F. App'x —, 2020 WL 6112795, at *4 (quoting *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 139 (2005)). The standard "does not preclude an appellate court's correction of a district court's legal or factual error[.]" *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 n.2 (2014). "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)); *see also United States v. Pembrook*, 609 F.3d 381, 383 (6th Cir. 2010) ("A district court abuses its discretion when it relies on clearly erroneous findings of fact, applies the law improperly, or uses an erroneous legal standard."). "A court might abuse its discretion, for example, if it misreads the meaning of the extraordinary-reason requirement" or "if it interprets the law to bar it from granting a reduction when, in fact, it has discretion to do so." *Keefer*, — F. App'x —, 2020 WL 6112795, at *4.

We must strike the proper balance under the abuse-of-discretion standard, which demands that we both accord due deference to district judges and correct their factual and legal errors. We start by requiring "a thorough factual record for our review": district courts must supply "specific factual reasons, including but not limited to due consideration of the § 3553(a) factors, for its [compassionate release] decision." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020) (footnote omitted). We look at the "whole" record in sentence-modification proceedings, including the records from the original sentencing, records on the modification motion, and the final compassionate release decision. *See Ruffin*, 2020 WL 6268582, at *7; *Curry*, 606 F.3d at 331; *United States v. Latham*, 809 F. App'x 320, 321 (6th Cir. 2020).

District judges maintain an "obligation to provide reasons" in both sentencing-modification decisions, *Chavez-Meza v. United States*, — U.S. —, 138 S. Ct. 1959, 1963 (2018), and traditional sentencing decisions, *Rita v. United States*, 551 U.S. 338, 356–58 (2007).[23]

---

[23]As explained above, sentencing and sentence-modification decisions are distinct creatures. *See Chavez-Meza*, 138 S. Ct. at 1964 ("Indeed, the case before us differs from the Guidelines cases that *Rita* describes in only one significant respect. It concerns a limited form of *re*sentencing."). *Chavez-Meza* assumes that the Court's decisions concerning traditional sentencing proceedings—*Rita*, 551 U.S. at 338, and *Gall*, 552 U.S. at 38—apply to sentence-modifications. *See Chavez-Meza*, 138 S. Ct. at 1966 ("[W]e find that the District Court's explanation satisfies the standard we used in *Rita* and *Gall*, assuming it applies to sentence modifications."); *Smith*, 958 F.3d at 500 ("[T]he Supreme Court has recently assumed without deciding that the standard set out in *Rita*[] and *Gall*[] applies to a district court's modification of a sentence pursuant to a Guideline amendment under § 3582(c).").

This duty "reflects sound judicial practice[,]" promotes "the public's trust in the judicial institution," *Chavez-Meza*, 138 S. Ct. at 1964 (quoting *Rita*, 551 U.S. at 356), and finds textual support in § 3553, *id.* at 1963 (highlighting that § 3553(c) requires a judge to "state in open court the reasons for [the] imposition of the particular sentence") (alteration in original); *Rita*, 551 U.S. at 356 (same). Thus, in either kind of decision, the judge should "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Chavez-Meza*, 138 S. Ct. at 1964 (quoting *Rita*, 551 U.S. at 356).

Of course, we do not "insist[]" that district courts pen a "full opinion" in every sentencing or sentencing-modification decision. *Chavez-Meza*, 138 S. Ct. at 1964 (quoting *Rita*, 551 U.S. at 356). "[W]here 'a matter is [] conceptually simple . . . and the record makes clear that the sentencing judge considered the evidence and arguments, we do not believe the law requires the judge to write more extensively.'" *Id.* (quoting *Rita*, 551 U.S. at 359). But our leniency is highly dependent on "context and the record[,]" *id.* at 1966 (quoting *Rita*, 551 U.S. at 359), and is reserved for the simplest of cases, *see id.* at 1967–68 ("[G]iven the simplicity of *this* case, the judge's awareness of the arguments, his consideration of the relevant sentencing factors, and the intuitive reason why he picked a sentence above the very bottom of the new range, the judge's explanation (minimal as it was) fell within the scope of the lawful professional judgment that the law confers upon the sentencing judge."). Even when sentence-modification cases appear straightforward, we nonetheless encourage judges to be explicit and particular with their factual reasoning. *See id.* at 1967 ("[T]he courts of appeals are well suited to request a more detailed explanation when necessary.").

---

But the *Chavez-Meza* Court declined to decide whether district judges' obligation to explain their decisions is the same in sentencing and sentence-modification proceedings. *See Chavez-Meza*, 138 S. Ct. at 1965. Nonetheless, the Court indicated that *some* obligation to explain the reasons behind sentence-modification decisions exists. *See id.* ("The Government, pointing out that this is a sentence-modification case, argues that this fact alone should secure it a virtually automatic victory. That is because, unlike an ordinary Guidelines sentencing case, the statute governing sentence-modification motions does not insist that the judge provide a 'reason for imposing a sentence at a particular point within the range.' . . . [T]he Government asserts . . . that 'the court has no duty' to provide an 'on-the-record explanation' of its reasons. We need not go so far.") (citations omitted)). Our decision here is in line with *Chavez-Meza*.

When compassionate release motions are decided on the papers—as they often are—appellate courts cannot glean district judges' factual findings from hearing transcripts or other record items as is possible in our reviews of traditional sentencing decisions. We require judges to write more extensively in § 3582(c)(1)(A) decisions where the record bears little indication that the district judge considered all the defendant's evidence and arguments before granting or denying compassionate release. *Ruffin*, 978 F.3d 1000, 2020 WL 6268582, at *7 (citing *Chavez-Meza*, 138 S. Ct. at 1966–67). The obligation to explain is imperative when the original sentencing judge and the compassionate release decision judge are different persons, as the original sentencing transcript does not reflect the latter judge's factual reasons for their § 3582(c)(1)(A) decision. *Cf. Keefer*, — F. App'x —, 2020 WL 6112795, at *4 (describing the "common scenario" where "the district judge who sentenced the defendant is the same judge who considers the defendant's reduction-of-sentence motion" and thus "will *already* have considered and balanced the § 3553(a) factors the first time around at the original sentencing").

In the mine-run of § 3582(c)(1)(A) cases, we do not tolerate "exceedingly slim" records. *See Latham*, 809 F. App'x at 322 (vacating sentence-modification decision under 18 U.S.C. § 3582(c)(1)(B) and remanding because "[t]he record as to both [the initial sentencing and the modified one] is exceedingly slim here[,]" which did not provide "any basis for meaningful review of the court's decision"). Absent thorough record evidence of the judge's factual decisions, district courts should not issue single-sentence or otherwise exceedingly slim compassionate release decisions or cite § 1B1.13 or the § 3553(a) factors without any analysis of their requirements. In most circumstances, "[a] district court's use of a barebones form order . . . would be inadequate." *Chavez-Meza*, 138 S. Ct. at 1967.

We further refine the district court's obligation to explain at the third § 3582(c)(1)(A) step: the consideration of the § 3553(a) factors. Section 3553(a) blankets a vast terrain of sentencing factors, such as the nature of the offense, the characteristics of the defendant, and numerous penological objectives. "The district court is best situated to balance the § 3553(a) factors." *Kincaid*, 802 F. App'x at 189; *see also United States v. Austin*, 825 F. App'x 324, 326 (6th Cir. 2020) (order). But an appellate court that deems a district court's explanation of the § 3553(a) factors to be "inadequate in a particular case," retains "broad discretion" to "send the

case back to the district court for a more complete explanation." *Chavez-Meza*, 138 S. Ct. at 1965 (citation omitted); *see also Gall*, 552 U.S. at 51 ("[When] the appellate court [] review[s] the sentence under an abuse-of-discretion standard[,] [i]t must first ensure that the district court committed no significant procedural error, such as . . . failing to consider the § 3553(a) factors . . . .").

Once again, we counterpoise deference and review. District courts should consider all relevant § 3553(a) factors before rendering a compassionate release decision. *See Gall*, 552 U.S. at 49–50 (reasoning, in the context of original sentencing decisions, that "after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider *all* of the § 3553(a) factors to determine whether they support the sentence requested by a party") (emphasis added); *Curry*, 606 F.3d at 331 (determining that judge "had considered *all the relevant* § 3553(a) factors" in sentence modification pursuant to § 3582(c)(2)) (emphasis added). But "as long as the record *as a whole* demonstrates that the pertinent factors were taken into account by the district court[,]" *Curry*, 606 F.3d at 330 (quoting *United States v. Williams*, 557 F.3d 1254, 1256 (11th Cir. 2009)) (emphasis added), a district judge need not "specifically articulat[e]" its analysis of every single § 3553(a) factor, *id.*; *see also Ruffin*, 978 F.3d 1000, 2020 WL 6268582, at *7. Again, we look at what the judge stated about the § 3553(a) factors in both the initial sentencing and the sentencing-modification proceedings when determining whether the judge satisfied her obligation to explain. *See Ruffin*, 978 F.3d 1000, 2020 WL 6268582, at *7; *Chavez-Meza*, 138 S. Ct. at 1967 ("We [] need not turn a blind eye to what the judge said at petitioner's initial sentencing.").

In the present case, the district judge also initially sentenced Jones. Reading the judge's compassionate release decision and the original sentencing hearing transcript together reveals that the district judge carefully considered all relevant § 3553(a) factors. In his compassionate release opinion, the district judge acknowledged that Jones is incarcerated at FCI Elkton (relevant to § 3553(a)(2)(D)), Jones's health issues (relevant to § 3553(a)(2)(D)), that Jones was convicted of a nonviolent drug offense (relevant to § 3553(a)(2)(A)), and that Jones behaved well in prison (relevant to § 3553(a)(1)). R. 202 (Dist. Ct. Op. at 1–2) (Page ID #1539–1540). But the judge also reasoned that Jones had served only two years of his decade-long sentence and

that Jones was a repeat offender (relevant to §§ 3553(a)(1), (a)(2)(A), (a)(2)(B), (a)(6)). *Id.* at 2 (Page ID #1540). The district judge was similarly deliberate at Jones's initial sentencing hearing. He considered Jones's positive progress in a program for persons who struggle with substance abuse (relevant to § 3553(a)(1)), that Jones had no juvenile adjudications (relevant to § 3553(a)(1)), and that Jones attained a high school diploma while incarcerated (relevant to § 3553(a)(1)). R. 189 (Sen'g Hr'g at 4) (Page ID #1383). The judge listened to Jones take responsibility for his actions and acknowledged Jones's long-standing drug addiction (relevant to §§ 3553(a)(1), (a)(2)(B)). *Id.* at 5 (Page ID #1384). But the judge was made aware that Jones had had previously served eighty-seven months for a serious trafficking offense and another thirty months for violating his supervised release (relevant to §§ 3553(a)(1), (a)(2)(B)). *Id.* at 4 (Page ID #1383). That this was not Jones's "first rodeo in Federal Court" perturbed the judge (relevant to §§ 3553(a)(1), (a)(2)(B)). *Id.* at 6 (Page ID #1385).

Notably, the district judge went through every relevant § 3553(a) factor at the sentencing hearing. *Id.* at 6–13 (Page ID #1385–92).[24] Between the compassionate release decision and the initial sentencing transcript, the only § 3553(a) factors that the district judge did not address were § 3553(a)(5) ("any pertinent policy statement[] issued by the Sentencing Commission pursuant to [28 U.S.C. §] 994(a)(2)") and § 3553(a)(7) ("the need to provide restitution to any victims of the offense"). But the district court was not required to evaluate these factors because the Sentencing Commission has not issued a policy statement under § 994(a)(2) that is pertinent to Jones, and Jones's crime appears to have been victimless.

Jones argues that the judge, in his compassionate release decision, should have explicitly contemplated the judge's own statements at Jones's initial sentencing proceeding that his "hands are tied" in giving Jones the mandatory minimum sentence. Appellant's Br. at 3, 5. But the very statements that Jones points to indicate that the district judge *did* consider Jones's mandatory

---

[24]"I'm also guided by the statute we call 3553(a) which is a statute that you and I discussed at the time of your guilty plea. . . . First the nature of the crime [i.e., § 3553(a)(1)] . . . . I'm also looking at your character and background [i.e., § 3553(a)(1)]. . . . The statute also requires, Mr. Jones, that my sentence reflect the seriousness of the crime; promote respect for the law, and provide for a just punishment; deter you and others from crimes like this; and protect the public [i.e., § 3553(a)(2)(A–D)]. Given that my hands are tied by Congress, my choice really here is, in my view, limited [i.e., § 3553(a)(3)] . . . . I will also encourage you to take part in programs [i.e., § 3553(a)(2)(D)]." R. 189 (Sent'g Hr'g at 6–13) (Page ID #1385–92).

minimum sentence. Again, district judges may be more cursory in their compassionate release decisions if the whole record supplies the judge's factual reasons, as is the case here with the judge's statements regarding Jones's mandatory minimum sentence.

"Judicial decisions are *reasoned* decisions." *Rita*, 551 U.S. at 356 (emphasis added). A record that is all bones and no meat starves criminal defendants of meaningful appellate review. But when the whole record denotes that a judge carefully reviewed all the arguments and evidence when applying § 3582(c)(1)(A)'s three-step test, a shorter opinion may satisfy the obligation to explain. In this case, our examination of the whole record reveals that the district judge's assessment of the § 3553(a) factors did not constitute an abuse of discretion.[25]

We affirm.

---

[25]As we explained, *supra*, this could have been a different case if the original sentencing judge was not the same judge issuing the compassionate release decision. In situations with two different judges, the original sentencing judge's articulation of every § 3553(a) factor on its own may not satisfy the compassionate release decision judge's obligation to explain. In this case, we are satisfied that the district judge thoroughly contemplated all relevant § 3553(a) factors across his two decisions.

---

**CONCURRING IN THE JUDGMENT**

---

COOK, Circuit Judge, concurring in the judgment. The scope of "extraordinary and compelling reasons" for compassionate release under 18 U.S.C. § 3582(c)(1)(A) "raises a difficult legal question" that "has sharply divided the courts." *United States v. Ruffin*, 978 F.3d 1000, ----, No. 20-5748, 2020 WL 6268582, at *5 (6th Cir. Oct. 26, 2020). This case does not require us to answer it. As with *Ruffin*, I would affirm based on the § 3553(a) factors only. *Id.* at *1, *5, *7.

The majority writes that "we can abstain no longer" from deciding this issue because, unlike *Ruffin*, the district court here "did not reference [USSG] § 1B1.13 at all in deciding whether 'extraordinary and compelling' circumstances existed." Op. at 13. But I maintain that distinction makes no difference here. *Ruffin* "merely flag[ged]" the issue because the court could "affirm the denial of relief based on the third discretionary rationale alone"—the § 3553(a) factors. 2020 WL 6268582, at *5. The same holds true in this case.

To the extent the majority finds that its three-step "order of analysis" for compassionate-release claims requires our intervention, I disagree. Op. at 10. No feature of § 3582(c)(1)(A) precludes a court from tackling the § 3553(a) factors first. Indeed, we have repeatedly decided compassionate-release cases based on the § 3553(a) factors while assuming that "extraordinary and compelling reasons warrant" a sentence reduction "and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A); *see Ruffin*, 2020 WL 6268582, at *1, *5, *7; *United States v. Keefer*, --- F. App'x ----, ----, No. 19-4148, 2020 WL 6112795, at *5 (6th Cir. Oct. 16, 2020); *United States v. Austin*, 825 F. App'x 324, 325–26 (6th Cir. 2020) (order). The fact that the district court "opt[ed] to answer the easier question" here does not compel us to answer the harder. *Gradisher v. City of Akron*, 794 F.3d 574, 584 (6th Cir. 2015) (citation omitted).

I agree with the majority that the district court acted within its discretion in concluding that the § 3553(a) factors weighed against compassionate release. But I would leave it at that.

*See BellSouth Telecomms., Inc. v. Farris*, 542 F.3d 499, 505 (6th Cir. 2008) ("If it is not necessary to decide more, it is necessary not to decide more." (quoting *PDK Labs. Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment))).

I concur in the judgment to affirm.