RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0126p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JASON J. JARVIS,

*Defendant-Appellant.*

No. 20-3912

───────────────

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:94-cr-00068-4—Christopher A. Boyko, District Judge.

Decided and Filed:  June 3, 2021

Before:  SUTTON, Chief Judge; CLAY and McKEAGUE, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:**  Jeffrey B. Lazarus, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant.  Justin Seabury Gould, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

SUTTON, C.J., delivered the opinion of the court in which McKEAGUE, J., joined. CLAY, J. (pp. 9–16), delivered a separate dissenting opinion.

───────────────

## OPINION

───────────────

SUTTON, Chief Judge.  A jury found Jason Jarvis guilty of committing a series of bank robberies.  He now seeks a reduced sentence.  The district court denied his motion for compassionate release, concluding that non-retroactive changes in the law could not serve as the "extraordinary and compelling reasons" required for a sentence reduction.  We agree and affirm.

In 1994, a federal grand jury indicted Jarvis on a slew of offenses connected with a string of bank robberies. A jury found him guilty of four counts of armed bank robbery, one count of conspiracy to commit the same, and five counts of using a firearm in furtherance of a crime of violence. *See* 18 U.S.C. §§ 2113, 371, 924(c).

In sentencing Jarvis, the district court determined that his first firearm conviction under § 924(c) generated a statutory minimum sentence of five years and that his other four § 924(c) convictions counted as repeat offenses, each subject to a statutory minimum of 20 years (to be imposed consecutively). 18 U.S.C. § 924(c)(1) (1994). The court sentenced Jarvis to 85 years on his § 924(c) convictions and to 11 years on his other convictions, generating a total sentence of 96 years.

In 2014, the Supreme Court decided *Rosemond v. United States*, 572 U.S. 65 (2014). *Rosemond* clarified the proof required for the intent element of aiding-and-abetting liability under § 924(c). To satisfy the element, a defendant must have "advance knowledge" that a firearm would be used in the crime. *Rosemond*, 572 U.S. at 78. In *Rosemond*'s aftermath, Jarvis successfully moved to have three of his § 924(c) convictions vacated for insufficient evidence of advance knowledge. *See* Fed. R. Crim. P. 60(b). The district court resentenced Jarvis to 40 years: 5 for his first § 924(c) conviction, 20 for his second, and 15 for his bank robbery and conspiracy convictions.

In 2018, Congress enacted the First Step Act. *See* Pub. L. No. 115-391, 132 Stat. 5194. Relevant here, the Act amended § 924(c), limiting the kinds of firearm convictions that would count as repeat offenses. First Step Act, § 403(a); *see United States v. Richardson*, 948 F.3d 733, 744–45 (6th Cir. 2020). Were Jarvis sentenced today under these changes, his second § 924(c) conviction would generate a statutory minimum of 5 years rather than 20 years. But Congress expressly chose not to apply this change to defendants sentenced before the passage of the Act. First Step Act, § 403(b); *see Richardson*, 948 F.3d at 745–46, 753.

Even so, Jarvis moved for a sentence reduction under what has come to be known as the "compassionate release" statute. *See* 18 U.S.C. § 3582(c)(1)(A)(i). That statute allows district courts to lower a defendant's sentence if, among other requirements, "extraordinary and compelling reasons" support a reduction. *Id.* If such reasons exist, the district court then considers the § 3553(a) factors in determining what kind of reduction to grant. *Id.*; *United States v. Ruffin*, 978 F.3d 1000, 1005 (6th Cir. 2020). In bringing the motion, Jarvis invoked the COVID-19 pandemic and the First Step Act's amendments to § 924(c). As for the latter, he contended that, if he were sentenced for the same offenses today, he would receive a sentence of 25 years, not 40 years. Having served 26 years already, he asked the district court to release him.

The district court denied the motion. Among other rationales, it explained that the First Step Act's non-retroactive change to § 924(c) could not as a matter of law be an "extraordinary and compelling" reason under § 3582(c)(1)(A)(i). R.580 at 6–7. Jarvis appeals that ruling and a few other aspects of the order.

A recent decision all but resolves this appeal in favor of the government. In *United States v. Tomes*, we held that a similar, non-retroactive statutory change in the First Step Act could not serve as an "extraordinary and compelling reason" under § 3582(c)(1)(A)(i). 990 F.3d 500, 505 (6th Cir. 2021).

The provision at issue in *Tomes*, § 401 of the First Step Act, reduced the penalties for certain drug crimes. *Id.* When it came to § 401's retroactivity, Congress struck a deliberate balance: "This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." First Step Act, § 401(c). Permitting defendants sentenced before the Act to benefit from § 401, we reasoned, would render § 401(c) useless. *Tomes*, 990 F.3d at 505. *Tomes* establishes that the sentence-reduction statute, § 3582(c)(1)(A), does not give district courts a license to "end run around Congress's careful effort to limit the retroactivity of the First Step Act's reforms." *Id.*; *see* 1 U.S.C. § 109; *cf. United States v. Blewett*, 746 F.3d 647, 656–58 (6th Cir. 2013).

That principle applies with identical force here. As it did for § 401 of the First Step Act, Congress explained that § 403 of the Act (which amended § 924(c)) "shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." First Step Act, § 403(b). The same non-retroactivity language in the same Act means the same result. As in *Tomes*, we "will not render" § 403(b) "useless by using § 3582(c)(1)(A)" to thwart Congress's retroactivity choices. 990 F.3d at 505.

Jarvis argues that, even if the First Step Act's amendments do not amount to an extraordinary and compelling reason on their own, they meet the standard when combined with three other considerations: COVID-19, his high blood pressure, and his rehabilitative efforts. His approach assumes that the district court did not err when it reasoned that these three considerations in combination did not rise to the level of extraordinary and compelling. *See United States v. Loggins*, 966 F.3d 891, 893 (8th Cir. 2020). The approach then contemplates that an error nonetheless occurred when the court failed to add the First Step Act's non-retroactive amendments to the extraordinary-and-compelling equation. But adding a legally impermissible ground to three insufficient factual considerations does not entitle a defendant to a sentence reduction.

Jarvis insists that *Tomes*'s First Step Act discussion amounts to dicta. We do not see why. That analysis was central to its reasoning, the key point indeed of its reasoning. Ask this question: Would *Tomes* have come out differently if sentencing law required the district court to consider the First Step Act amendments in deciding whether extraordinary circumstances had been shown? Yes is the only answer we can discern from reading the opinion. That the First Step Act's amendments could amount to an extraordinary and compelling reason, *Tomes* reasoned, fails to grapple with congressional design, expressed through the text of the statute, in which Congress chose not to make these sentencing amendments retroactive. 990 F.3d at 505. Why would the same Congress that specifically decided to make these sentencing reductions non-retroactive in 2018 somehow mean to use a general sentencing statute from 1984 to unscramble that approach? If every defendant who received a longer sentence than the one he would receive today became eligible for compassionate release, the balance Congress struck

would come to naught.  *See id.*; *see also United States v. Maumau*, 993 F.3d 821, 838 (10th Cir. 2021) (Tymkovich, C.J., concurring) ("Indeed, the imposition of a sentence that was not only permissible but statutorily required at the time is neither an extraordinary nor a compelling reason to now reduce that same sentence.").

We appreciate that the Fourth Circuit disagrees with us, and that the Tenth Circuit disagrees in part with us.  The Fourth Circuit held that the First Step Act's changes to § 924(c), plus the resulting "disparity" between the sentence a defendant received and "the sentence a defendant would receive today," may amount to "extraordinary and compelling reasons."  *United States v. McCoy*, 981 F.3d 271, 285–87 (4th Cir. 2020).  The Tenth Circuit reasoned that the First Step Act's non-retroactive amendments may satisfy the standard when "combin[ed]" with "a defendant's unique circumstances."  *United States v. McGee*, 992 F.3d 1035, 1048 (10th Cir. 2021).

The first answer to this line of argument is that *Tomes* binds us.  *McCoy* and *McGee* do not.

The second answer is that *McCoy* and *McGee* seem to rest on the goals of alleviating unfair and unnecessary sentences as judged by today's sentencing laws, *McCoy*, 981 F.3d at 285–86, and of promoting "individualized, case-by-case" sentencing decisions, *McGee*, 992 F.3d at 1047.  We have no quarrel with these ends.  But there happens to be a superior means for achieving them, one that accounts for these fairness concerns *and* honors the choices Congress made through the laws it enacted.

In *United States v. Maxwell*, 991 F.3d 685, 688 (6th Cir. 2021), we considered how a different non-retroactive legal change (our intervening case law about the Guidelines) interacted with a different sentencing reduction statute (§ 404(b) of the First Step Act).  The district court, we reasoned, could not rely on a non-retroactive sentencing law change in calculating the guidelines sentencing range, but it could consider that change in selecting an appropriate sentence under the § 3553(a) factors.  The text of the sentencing statute drove the first point home:  "It ask[ed] the court to sentence Maxwell 'as if' the crack-cocaine sentencing range had been reduced under the Fair Sentencing Act of 2010, not as if other changes had been made to

sentencing law in the intervening years." *Maxwell*, 991 F.3d at 689.  The text of § 3553(a) drove the second point home:  It called for district courts to consider, among other factors, the need to "reflect the seriousness of the offense" and the need to "protect the public from further crimes of the defendant"—considerations that brought to the fore "up-to-date notions about the risk of recidivism" reflected by current sentencing law.  *Maxwell*, 991 F.3d at 691.

An analogous approach works here.  The text of these sentencing statutes does not permit us to treat the First Step Act's non-retroactive amendments, whether by themselves or together with other factors, as "extraordinary and compelling" explanations for a sentencing reduction. *See Tomes*, 990 F.3d at 505.  But for those defendants who can show some other "extraordinary and compelling" reason for a sentencing reduction (and we have plenty of deferential decisions on this score), they may ask the district court to consider sentencing law changes like this one in balancing the § 3553(a) factors—above all with respect to the community safety factor.

That leaves one last development, a recently decided case of our court:  *United States v. Owens*, No. 20-2139, 2021 WL 1811538 (6th Cir. May 6, 2021).  *Owens*, in one sense, shares many premises of today's decision.   It does not dispute that the same rule for compassionate-release motions should apply to § 401 and § 403 of the First Step Act.  *See Owens*, No. 20-2139, 2021 WL 1811538 at *4 n.3.  It does not dispute *Tomes*'s retroactivity discussion.  And it does not dispute that district courts may consider the non-retroactive First Step Act amendments in applying the § 3553(a) factors once an inmate has met the threshold requirements for relief under the compassionate release statute.

Despite these shared premises, *Owens* does not follow *Tomes*'s reasoning or holding that a non-retroactive First Step Act amendment fails to amount to an "extraordinary and compelling" explanation for a sentencing reduction.  But *Tomes*, decided before *Owens*, "remains controlling authority" that binds this panel.  *Salmi v. Sec'y of Health & Hum. Servs.*, 774 F.2d 685, 689 (6th Cir. 1985).  Forced to choose between conflicting precedents, we must follow the first one, *Tomes*.

We appreciate that *Owens* and our colleague in dissent today interpret this part of *Tomes* as dicta.  *Owens*, for example, claims that *Tomes* held only that a defendant may not rely on a

non-retroactive amendment *alone* when trying to establish extraordinary and compelling reasons. *Owens*, No. 20-2139, 2021 WL 1811538 at *4. But that is inaccurate. The defendant in *Tomes* added his First Step Act arguments to his contention that his "rehabilitation, strong family support, and apparently inequitable sentence were extraordinary and compelling reasons for release." 990 F.3d at 502. The defendant in *Tomes* in fact presented five reasons for granting relief. *Id.* at 501–02. A faithful reading of *Tomes*, we respectfully submit, leads to just one conclusion: that it excluded non-retroactive First Step Act amendments from the category of extraordinary or compelling reasons, whether a defendant relies on the amendments alone or combines them with other factors.

As a practical matter, we wonder if a defendant has ever invoked the First Step Act amendments *alone* to establish extraordinary or compelling reasons for a sentencing reduction, particularly during COVID. No doubt, "never," "ever," and "always" are words usually best removed from lawyers' and judges' vocabulary. But we think any such instance would be rare. Even the one case that might seem to fit the bill, *United States v. Wills*, No. 20-6142, 2021 WL 1940430 (6th Cir. May 14, 2021), does not. In his handwritten request for relief, it turns out, Wills urged the district court to grant relief not just because he would have received a shorter sentence today, but also because it would allow him to "return to my family . . . [and be able to] reside with my father . . . [after having] learned a marketable skill [involving] industrial sewer . . . [and permit me to] resume taking financial responsibility for my child." No. 2:16-CR-055, 2020 WL 5800922 (E.D. Tenn. Sept. 28, 2020), R.1011 at 1-2 (No. 20-6142). *Owens*, in short, runs the risk of distinguishing *Tomes* into a null set, one that would not even include Tomes himself.

One last point. After the district court entered its order in this case, we explained that courts considering compassionate release motions do not have to follow the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13, a policy statement that "limits . . . 'extraordinary and compelling reasons' . . . to just four situations." *Tomes*, 990 F.3d at 502; *see United States v. Elias*, 984 F.3d 516, 519–20 (6th Cir. 2021). They instead "have discretion to define 'extraordinary and compelling'" circumstances. *Elias*, 984 F.3d at 519–20. Jarvis claims that the district court mistakenly believed it had to stick to the policy statement

when determining whether "extraordinary and compelling reasons" exist. Not so. The district court noted that the policy statement was "outdated" and simply looked to it for "guidance," R.580 at 7, an approach we approved in *Tomes*. *See* 990 F.3d at 503 n.1. The district court, moreover, correctly concluded that it lacked the authority to reduce Jarvis's sentenced based on a non-retroactive change in the law—not because of the Sentencing Commission's policy statement but because of the relevant statutory texts.

We affirm.

---

**DISSENT**

---

CLAY, Circuit Judge, dissenting. In passing the First Step Act, Congress amended 18 U.S.C. § 3582(c)(1)(a) to allow federal district courts to grant compassionate release under appropriate circumstances to those incarcerated in federal prison, even in instances where the Bureau of Prisons opts not to do so. In accordance with this understanding of the amendment, we have found that district courts are not required to consider the policy statement in U.S.S.G. § 1B1.13 in determining what constitutes an extraordinary and compelling reason for release, thereby permitting district courts discretion in determining whether an individual defendant has demonstrated an extraordinary and compelling reason for release. *See United States v. Jones*, 980 F.3d 1098, 1110–11 (6th Cir. 2020). In line with that precedent, in *United States v. Owens*, 996 F.3d 755, 760 (6th Cir. 2021), we determined that a district court can consider a non-retroactive First Step Act amendment that creates a sentencing disparity in combination with other factors as the basis for an extraordinary and compelling reason for compassionate release.

The majority today ignores this binding precedent from our circuit and erroneously concludes that our previous decision in *United States v. Tomes*, 990 F.3d 500, 505 (6th Cir. 2021), requires that we affirm the district court's denial of compassionate release in this case. But in fact, *Tome*s' conclusion that a non-retroactive sentence amendment cannot support a motion for compassionate release amounts to dicta that we are not bound to follow. Additionally, as *Owens* made clear, *Tomes* did not foreclose the conclusion that a sentencing disparity from a non-retroactive statutory change along with other grounds for release can serve as extraordinary and compelling reasons. *See Owens*, 996 F.3d at 763. By ignoring *Owens*, the majority contravenes the purpose of compassionate release to grant release, based on the consideration of the defendant's unique circumstances, to individual defendants in extraordinary situations not covered by another statute. Accordingly, I would reverse and remand this case so that the district court can consider in the first instance whether the combination of Defendant Jason Jarvis' health conditions in light of the risk from COVID-19 and the sentence disparity

based on the First Step Act's amendment to 18 U.S.C. § 924(c) provide extraordinary and compelling reasons for release.

Contrary to the majority opinion's contention, we are bound in the present case by our recent decision in *Owens*. In that case, the district court had denied Owens' motion for compassionate release because "the disparity between the sentence that Owens received and the sentence that he would receive today because of the First Step Act's amendments to § 924(c) was not an extraordinary and compelling reason to merit compassionate release."[1] *Owens*, 996 F.3d at 758 (internal quotations and citation omitted). Reversing and remanding the district court's order, we held that "in making an individualized determination about whether extraordinary and compelling reasons merit compassionate release, a district court may include, along with other factors, the disparity between a defendant's actual sentence and the sentence that he would receive if the First Step Act applied." *Id.* at 760. We distinguished our prior decisions in *Tomes* and *United States v. Wills*, No. 20-6142, 2021 WL 1940430, at *2 (6th Cir. May 14, 2021),[2] because those opinions "considered whether the impact of a reduction in the applicable mandatory-minimum sentence in a different provision of the First Step Act, § 401, was sufficient by itself to constitute an extraordinary and compelling reason for compassionate release under § 3582(c)(1)(A)."[3] *Id.*

We then proceeded to adopt the position taken in *United States v. McGee*, in which the Tenth Circuit held that a district court could find the "existence of 'extraordinary and compelling reasons' based, in part, on a defendant's pre-First Step Act mandatory life sentence under § 841(b)(1)(A)" in combination with "a defendant's unique circumstances that constitute

---

[1]The district court in *Owens* reasoned that because "Congress expressly declined to make the changes to § 924(c) retroactive, and the Sixth Circuit has implicitly recognized as much," it would "circumvent congressional intent and guidance from the Circuit Court to consider the First Step Act's changes to § 924(c) as an extraordinary and compelling reason." *Owens*, 996 F.3d at 758 (internal quotations and citations omitted).

[2]In his motion for compassionate release, Wills' only argument as to extraordinary and compelling reasons for release was that "under section 401 of the First Step Act, he would not be subject to a 20-year mandatory minimum sentence because his prior felony drug conviction would not qualify as a 'serious drug felony' and therefore would not trigger the sentence enhancement." *Wills*, 2021 WL 1940430, at *2.

[3]As the majority correctly notes, the basis of the distinction was not the particular First Step Act amendment at issue but rather the fact that the Court in *Wills* and *Tomes* considered whether the sentence disparity based on the non-retroactive First Step Act amendment on its own was an extraordinary and compelling reason for release. *See* Majority Op. at 6; *Owens*, 996 F.3d at 760 n.3.

'extraordinary and compelling reasons' for purposes of § 3582(c)(1)(A)(i)." *United States v. McGee*, 992 F.3d 1035, 1047–48 (10th Cir. 2021); *see Owens*, 996 F.3d at 761. Although the First Step Act amendments at issue in *McGee* and *Owens* did not apply retroactively, we noted that "there is nothing in § 401(c) or any other part of the First Step Act that indicates that Congress intended to prohibit district courts, on an individualized, case-by-case basis, from granting sentence reductions under § 3582(c)(1)(A)(i)" to some defendants who would be eligible for a lower sentence under current law. *Owens*, 996 F.3d at 761 (internal quotations omitted) (quoting *McGee*, 992 F.3d at 1047). And as the Tenth Circuit stated in *McGee*, "Congress's purpose in enacting § 3582(c)(1)(A) was to provide a narrow avenue for relief when there is *not* a specific statute that already affords relief but extraordinary and compelling reasons nevertheless justify a sentence reduction." 992 F.3d at 1047 (cleaned up); *see Owens*, 996 F.3d at 761.

Our decision in *Owens* applies squarely in the present case. In support of his motion for compassionate release, Jarvis argued that he should receive a sentence reduction based on his health conditions of high blood pressure and bronchitis, BOP's poor handling of the COVID-19 pandemic, and the sentencing disparity created by the amendment to § 924(c) under § 403 of the First Step Act. Although the district court purportedly considered these factors in combination with each other in denying Jarvis compassionate release, it held unilaterally that "a disparity based on a change in sentencing law cannot serve as 'extraordinary and compelling reasons' under § 3582(c)(1)(A)" to support compassionate release, reasoning that "[f]acts like the First Step amendments" were "too general to satisfy this individualized analysis" and that Congress could have applied these amendments retroactively but chose not to do so. (R. 580, Op & Order at PageID # 1612–13.) The district court's conclusion on this issue is contrary to *Owens*' holding that a sentence disparity pursuant to a non-retroactive First Step Act amendment can be considered along with other factors as extraordinary and compelling reasons for release, warranting reversal and remand of Jarvis' case to the district court. *See Owens*, 996 F.3d at 760.

Ignoring our precedent in *Owens*, the majority opinion incorrectly applies dicta from *Tomes* to affirm the district court in the present case. In *Tomes*, we affirmed the district court's denial of compassionate release because the district court's consideration of the relevant

18 U.S.C. § 3553(a) factors—namely the seriousness of the crime, deterrence, and protecting the public—did not constitute an abuse of discretion. 990 F.3d at 504. Only after reaching this conclusion did we reject Tomes' argument that he should receive compassionate release based on § 401 of the First Step Act—under which his prior drug convictions would no longer trigger a twenty-year mandatory minimum sentence. *Id.* at 505. We reasoned that the relevant amendment explicitly does not apply retroactively, and, given that Tomes was sentenced before the effective date of the amendment, he could not use § 3582(c)(1)(A) "as an end run around Congress's careful effort to limit the retroactivity of the First Step Act's reforms." *Id.*

In considering the binding effect of published panel opinions on future panels, we have previously indicated that "the holding of a published panel opinion binds all later panels," but *dicta* is not binding. *Wright v. Spaulding*, 939 F.3d 695, 700 (6th Cir. 2019). In *Wright*, we noted that the following principles were relevant to determining whether a court's conclusion is a holding or dictum: (1) "[t]he decision of the issue must contribute to the judgment: whether and why the court affirms, reverses, vacates, or remands," such as "[a] legal conclusion that is necessary to the judgment" or "one *sufficient* to support the judgment but not strictly necessary in light of an *independent* and equally sufficient conclusion;" (2) "the court intended to rest the judgment (if necessary) on its conclusion about the issue;" and (3) "the court considered the issue and consciously reached a conclusion about it." *Id.* at 701–02 (emphasis in original).

The conclusion in *Tomes* regarding whether § 401 of the First Step Act could be a ground for compassionate release is dicta because it was not necessary for the judgment. In *Tomes*, we did not need to discuss whether extraordinary and compelling reasons for release existed because we found that the district court's analysis of the § 3553(a) factors supported the judgment below. *See* 990 F.3d at 504; *see also United States v. Ruffin*, 978 F.3d 1000, 1006 (6th Cir. 2020) (noting that "the district court denied Ruffin's motion under all three statutory requirements" for compassionate release but finding that "we may affirm the denial of relief based on the third discretionary rationale alone"—the district court's balancing of the § 3553(a) factors). This conclusion was also not independently sufficient to support the judgment, given that Tomes raised other extraordinary and compelling reasons in support of his motion for compassionate release. *See Tomes*, 990 F.3d at 504 (citing his "chronic asthma, which increases his risk of

serious illness from COVID-19," as a ground for compassionate release).  And we only briefly considered the argument based on the First Step Act amendment under § 401 as an afterthought at the end of the opinion after already relying on the district court's § 3553(a) analysis to support affirming its judgment.  *See id.* at 505.

In contrast, *Owens*' holding that district courts can consider a sentence disparity resulting from a non-retroactive First Step Act amendment along with other factors as an extraordinary and compelling reason for release is "controlling authority" that "[a] panel of this Court cannot overrule."  *Salmi v. Sec'y of Health & Hum. Servs.*, 774 F.2d 685, 689 (6th Cir. 1985).  Unlike in *Tomes*, in *Owens*, the only basis that the district court offered in denying the motion of compassionate release was that "the disparity between the sentence that Owens received and the sentence that he would receive today because of the First Step Act's amendments to § 924(c) was not an extraordinary and compelling reason to merit compassionate release."  996 F.3d at 758 (internal quotations and citation omitted).  As a result, our holding in *Owens* regarding the consideration of First Step Act amendments at compassionate release was necessary to reverse and remand the district court's denial of compassionate release, was intended to be the basis for the judgment, and—as evident in the Court's thorough analysis of the issue—was considered by this Court in coming to a "conscious" conclusion.  *Wright*, 939 F.3d at 700; *see also Owens*, 996 F.3d at 759–64.

Additionally, nothing in *Tomes* precludes a district court from considering a sentencing disparity due to a statutory amendment along with other grounds for release.  The majority incorrectly assumes that this Court in *Tomes* considered all of the reasons that Tomes raised for release in combination with each other based on him having presented them all to the district court in support of his motion for compassionate release.  *See* Majority Op. at 7.  But, after affirming the district court's analysis of the § 3553(a) factors and before even reaching the First Step Act amendment argument, we rejected Tomes' contentions that "he has chronic asthma, which increases his risk of serious illness from COVID-19"—having failed to "provide any records" to support this diagnosis—and that "the BOP cannot handle COVID-19 outbreaks."  *Tomes*, 990 F.3d at 505.  We then indicated, as "[o]ne last point," that "§ 3582(c)(1)(A) was not an appropriate vehicle for Tomes to attack his sentence"—without mentioning whether

sentencing disparities could be considered in combination with other individual circumstances on compassionate release. *Id.*; *see also McGee*, 992 F.3d at 1048 ("[W]e also agree with the Sixth Circuit's decision in *Tomes* that the fact a defendant is serving a pre-First Step Act mandatory life sentence imposed under § 841(b)(1)(A) cannot, standing alone, serve as the basis for a sentence reduction under § 3582(c)(1)(A)(i)."). Accordingly, *Tomes* cannot be read to foreclose the consideration of an applicable First Step Act amendment along with other factors as extraordinary and compelling reasons for release.

The majority's contention that the approach applied in *Owens* contravenes the "balance Congress struck" in making the First Step Act amendments non-retroactive ignores the individualized nature of compassionate release. Majority Op. at 4–5. As the Fourth Circuit noted in its decision in *United States v. McCoy*, "there is a significant difference between automatic vacatur and resentencing of an entire class of sentences – with its avalanche of applications and inevitable resentencings – and allowing for the provision of individual relief in the most grievous cases." 981 F.3d 271, 286–87 (4th Cir. 2020) (internal quotations and citations omitted). In holding in *McCoy* that it was permissible for district courts to "treat[] as 'extraordinary and compelling reasons' for compassionate release the severity of the defendants' § 924(c) sentences and the extent of the disparity between the defendants' sentences and those provided for under the First Step Act," the Fourth Circuit specifically emphasized that these determinations were "the product of individualized assessments of each defendant's sentence." *Id.* at 286. And given the significant discretion a district court has in determining whether there are extraordinary and compelling reasons for compassionate release—as well as whether the § 3553(a) factors support release—the majority's fear of numerous defendants becoming eligible for compassionate release is unwarranted. *See* Majority Op. at 4–5. Allowing for a non-retroactive amendment creating a sentencing disparity to be considered along with a defendant's unique circumstances in connection with a motion for compassionate release affords the proper deference to Congress's decision not to make the amendment retroactive. *See McGee*, 992 F.3d at 1047 ("[T]he possibility of a district court finding the existence of 'extraordinary and compelling reasons' based, in part, on a defendant's pre-First Step Act mandatory life sentence under § 841(b)(1)(A) does not, in our view, necessarily usurp Congressional power."). This

approach also acknowledges the role of compassionate release to consider individual circumstances in determining whether a sentence reduction is appropriate.

The majority also attempts to overcome the shortcomings in its argument by offering the alternative that a district court could consider a nonretroactive change in sentencing law in its analysis of the § 3553(a) factors, citing to our decision in *United States v. Maxwell*, 991 F.3d 685 (6th Cir. 2021), as presenting an analogous situation to the instant case. *See* Majority Op. at 5–6. However, in *Maxwell*, we determined that, in considering a motion for sentence reduction under § 404(b) of the First Step Act, a district court was not required to recalculate a defendant's Guidelines range based on changes in the law following the imposition of the sentence other than the amended sentencing range under the Fair Sentencing Act of 2010. 991 F.3d at 689. We reasoned that this provision only "expressly permitted" the district court to resentence the defendant "as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed," as opposed to obligating the district court to perform a plenary resentencing. *Id.* at 688–89 (internal citations and quotations omitted); s*ee also* 18 U.S.C. § 3582(c)(1)(B) ("The court may not modify a term of imprisonment once it has been imposed except that . . . the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by the statute . . . ."). Only then did we find that a district court can consider intervening legal changes "in balancing the § 3553(a) factors and in deciding whether to modify the original sentence." *Maxwell*, 991 F.3d at 692.

In contrast we have explicitly held that, in evaluating compassionate release motions under 18 U.S.C. § 3582(c)(1)(A), district courts "have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13" for purposes of determining whether extraordinary and compelling reasons support the defendant's release. *Jones*, 980 F.3d at 1111. Unlike the provision at issue in *Maxwell*, now that district courts do not need to consider § 1B1.13, the compassionate release statute provides for no further limitation on the scope of "extraordinary and compelling" reasons for release. *See* 18 U.S.C. § 3582(c)(1)(A)(i). Additionally, that a district court can consider a non-retroactive sentencing amendment in its balancing of the § 3553(a) factors on a compassionate release motion does not help defendants similarly situated to Jarvis. Any ability of the district court to consider these sentencing

disparities under § 3553(a) will not be relevant to defendants if they cannot first demonstrate extraordinary and compelling reasons for release.  *See United States v. Elias*, 984 F.3d 516, 520 (6th Cir. 2021) (finding that "[t]he district court could have denied Elias's motion for compassionate release" on the basis that she had not demonstrated an extraordinary and compelling reason for release).  The majority's proposed alternative fails to take into account the district court's discretion under § 3582(c)(1)(A)(i) and does not provide proper redress to defendants like Jarvis, whose other proffered reasons for release were not extraordinary and compelling, in the district court's view, to even reach the § 3553(a) prong of the compassionate release test.

Ultimately, we are bound in the present case by our previous holding in *Owens* that a district court can consider a sentencing disparity created by a non-retroactive sentencing amendment as an extraordinary and compelling reason for release in combination with other factors.  The majority's reliance on dicta from *Tomes* is an impermissible attempt to overrule *Owens*, which "remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." *Salmi*, 774 F.2d at 689.  And the relevant dicta from *Tomes* can only be read to indicate that a non-retroactive First Step Act amendment creating a sentencing disparity cannot alone serve as the basis for an extraordinary and compelling reason for release.  *Owens*' holding that a non-retroactive sentencing amendment can be considered along with other grounds for release is not only consistent with *Tomes* but also comports with the goal of compassionate release to allow sentence reductions for those individual defendants presenting unique and extraordinary circumstances.

For the foregoing reasons, I respectfully dissent and would reverse the district court's order denying compassionate release and remand the case for further proceedings.