RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0285p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DAVID E. MCCALL, JR.,

*Defendant-Appellant.*

> No. 21-3400

─────────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:13-cr-00345-41—Christopher A. Boyko, District Judge.

Decided and Filed: December 17, 2021

Before: MOORE, KETHLEDGE, and DONALD, Circuit Judges.

─────────────────

**COUNSEL**

**ON BRIEF:** Vanessa Malone, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Akron, Ohio, for Appellant. Matthew B. Kall, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

MOORE, J., delivered the opinion of the court in which DONALD, J., joined. KETHLEDGE, J. (pp. 12–13), delivered a separate dissenting opinion.

─────────────────

**OPINION**

─────────────────

KAREN NELSON MOORE, Circuit Judge. David McCall, who pleaded guilty to a conspiracy charge involving heroin possession and distribution in 2015, moved for compassionate release. He cited three "extraordinary and compelling circumstances" warranting his release: the COVID-19 pandemic, his rehabilitation efforts, and the fact that, under this

court's decision in *United States v. Havis*, he would have received a much shorter sentence. The district court acted as if it could not consider these factors, either alone or in tandem. Because our binding precedent says otherwise, we **REVERSE** the district court's judgment and **REMAND** for further proceedings consistent with this opinion.

## I. BACKGROUND

In 2013, the United States indicted David McCall and many others in connection with a heroin-distribution conspiracy. R. 35 (Superseding Indictment) (Page ID #411–601). McCall pleaded guilty to conspiracy to possess with intent to distribute and to distribute heroin, and the government dismissed its remaining possession, distribution, and facilitation charges. R. 1150 (Plea Agreement at 3) (Page ID #8507). Based on the drug quantities involved, McCall's base offense level would have been 24, but his status as a career offender increased his base offense level to 34. R. 1605 (Sent'g Tr. at 8–9) (Page ID #12724–25).

The district court sentenced McCall to 235 months in prison. R. 1501 (Judgment at 2) (Page ID #11944). Had McCall not been a career offender, his guidelines range would have been lower. McCall Br. at 4 (claiming a guidelines range of 77–96 months); Gov't Br. at 14 n.2 (claiming a guidelines range of 151–188 months). After McCall's sentencing, we held in *United States v. Havis* that "attempted" controlled substance offenses do not qualify as predicate offenses for the purpose of the Sentencing Guidelines' career-offender enhancement. 927 F.3d 382, 386–87 (6th Cir. 2019) (en banc) (per curiam). As a result, a district court cannot use an attempted controlled substance crime as a qualifier for a career-offender sentencing enhancement. *Id.* at 387. We subsequently applied *Havis*'s conclusion to convictions for conspiracy to distribute controlled substances. *See United States v. Cordero*, 973 F.3d 603, 626 (6th Cir. 2020).

In June 2020, McCall requested that the Bureau of Prisons ("BOP") file a motion for compassionate release or sentence reduction on his behalf. R. 2109-1 (Ex. A to Mot. for Compass. Release) (Page ID #17037). The BOP denied the request, *id.*, and McCall filed a pro se motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A), R. 2109 (Mot. for Compass. Release) (Page ID #17031–34). McCall's motion provided five "extraordinary and compelling

circumstances" supporting his motion that fell into three buckets: that COVID-19 presents "[d]eadly consequences" to "people with and without underlying medical conditions," that his prior convictions for drug trafficking and assault no longer qualify as predicate offenses for career-offender status post-*Havis*, and that he has rehabilitated himself. *Id.* at 3 (Page ID #17033).

McCall filed a supplement to the motion through counsel, identifying a number of district courts that had granted compassionate-release motions in part based on sentencing disparities in light of *Havis*. R. 2134 (Supp. to Mot. for Compass. Release at 5–8) (Page ID #17215–18) (citing *United States v. Jackson*, 515 F. Supp. 3d 708, 712–14 (E.D. Mich. 2021); *United States v. Lawrence*, No. 17-20259, 2021 WL 859044, at *1 (E.D. Mich. Mar. 8, 2021); and *United States v. Wahid*, No. 1:14-cr-00214, 2020 WL 4734409, at *2–3 (N.D. Ohio Aug. 14, 2020)). The supplement explained that the 18 U.S.C. § 3553(a) factors also favored granting compassionate release. *Id.* at 9–10 (Page ID #17219–20).

The United States opposed McCall's motion. The government said that McCall raised "generalized fears of contracting COVID-19, without more," which it argued were insufficient to constitute "extraordinary and compelling reasons" for the purpose of compassionate release. R. 2141 (Gov't Resp. Opposing Compass. Release at 12) (Page ID #17286) (quoting *United States v. Bothra*, No. 20-1364, 2020 WL 2611545, at *2 (6th Cir. May 21, 2020) (order)). The government also argued that "[p]ost-[s]entence legal developments [*i.e. Havis*] are not extraordinary," and that McCall's claimed rehabilitation could not on its own satisfy the requirement that McCall show extraordinary and compelling reasons to grant his release. *Id.* at 15 (Page ID #17289). Additionally, the government claimed that the § 3553(a) factors favor denying the motion, because McCall "poses a danger to the community" due to his criminal history. *Id.* at 13 (Page ID #17287).

The district court denied McCall's motion in a form order, finding that he failed to show an extraordinary and compelling reason to reduce his sentence. R. 2143 (Dist. Ct. Denial at 2) (Page ID #17307). The district court rejected McCall's discussion of COVID-19, saying that McCall "cites no health concern that puts him at risk in light of the pandemic." *Id.* The district court brushed away *Havis*'s effect, saying that the decision is nonretroactive and so could not

comprise an extraordinary and compelling reason. *Id.* And the court rejected on statutory grounds McCall's remaining argument of rehabilitation, saying that rehabilitation alone cannot form an extraordinary and compelling reason to grant compassionate release. *Id.* (citing 28 U.S.C. § 994(t)).

McCall timely appealed the district court's denial. R. 2153 (Notice of Appeal) (Page ID #17410). The district court had jurisdiction to consider McCall's compassionate-release motion under 18 U.S.C. § 3582(c)(1)(A). We have jurisdiction under 28 U.S.C. § 1291.

## II. ANALYSIS

"We review a district court's denial of compassionate release for abuse of discretion." *United States v. Jones*, 980 F.3d 1098, 1112 (6th Cir. 2020). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, applies the law improperly, or uses an erroneous legal standard." *United States v. Pembrook*, 609 F.3d 381, 383 (6th Cir. 2010). "'A court might abuse its discretion, for example, if it misreads the meaning of the extraordinary-reason requirement,' or 'if it interprets the law to bar it from granting a reduction when, in fact, it has discretion to do so.'" *Jones*, 980 F.3d at 1112 (quoting *United States v. Keefer*, 832 F. App'x 359, 363 (6th Cir. 2020)).

Title 18 U.S.C. § 3582(c)(1)(A) allows courts, when "warrant[ed]" by "extraordinary and compelling reasons[,]" to reduce an incarcerated person's sentence. *Jones*, 980 F.3d at 1104. This is known as "compassionate release," and although it has existed since 1984, courts "rarely considered" motions until 2018 because "a court [could] grant relief *only*" on the BOP's motion. *United States v. Ruffin*, 978 F.3d 1000, 1003 (6th Cir. 2020). In 2018, the First Step Act revised § 3582, allowing incarcerated persons to file compassionate-release motions in federal court without BOP approval so long as they either exhausted the BOP's administrative process, or requested compassionate release from their warden and then waited thirty days. *Jones*, 980 F.3d at 1105.[1] This procedural change, paired with COVID-19's devastating surge through our nation's prisons, has caused a sharp increase in both filings and grants of compassionate-release motions. *Id.*

---

[1]The parties agree that McCall satisfied this requirement. *See* Gov't Br. at 11.

A court may grant compassionate release when it finds three requirements are satisfied. First, the court must "find[]" that "extraordinary and compelling reasons warrant" a sentence reduction. *Jones*, 980 F.3d at 1107–08 (citing 18 U.S.C. § 3582(c)(1)(A)(i)). Second, the court must "find[]" that "such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission." *Id.* at 1108 (citing 18 U.S.C. § 3582(c)(1)(A)). When an incarcerated person, rather than the BOP, files a compassionate-release motion, the court omits this second step. *Id.* at 1108, 1111; *see also United States v. Owens*, 996 F.3d 755, 759 n.2 (6th Cir. 2021). Third, the court must "consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Jones*, 980 F.3d at 1108 (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)). "[D]istrict courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). And even if a district court finds all the requirements satisfied, it still may deny compassionate release, because "the compassionate release decision is discretionary, not mandatory." *Jones*, 980 F.3d at 1106.

There is one other relevant provision of the First Step Act. The Act reduced some federal crimes' mandatory-minimum sentences. *See Owens*, 996 F.3d at 759; *United States v. Wills*, 997 F.3d 685, 688 (6th Cir. 2021) (order).[2] But Congress applied those changes only to "any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." First Step Act, Pub. L. 115-391, Title IV, §§ 401(c), 403(b).[3] Individuals sentenced before the First Step Act's enactment are not eligible for resentencing under these statutory changes. *Owens*, 996 F.3d at 759.

We have repeatedly discussed over the past two years what constitutes extraordinary and compelling reasons warranting release. In *United States v. Tomes* and *United States v. Wills*, we held that due to the First Step Act's nonretroactivity provisions, an incarcerated person could not show that extraordinary and compelling circumstances warranted their release based solely on

---

[2]*United States v. Wills* was initially published at 991 F.3d 720, and subsequently republished as the version cited in this opinion. The revision does not affect *Wills*'s main holding, or subsequent cases' discussion of the case.

[3]We use the same framework to evaluate these two sections. *See United States v. Richardson*, 948 F.3d 733, 750 (6th Cir.), *cert. denied*, — U.S. —, 141 S. Ct. 344 (2020).

the disparity between the sentence they received and the sentence they would have received if they were sentenced after the First Step Act. *Tomes*, 990 F.3d 500, 505 (6th Cir. 2021); *Wills*, 997 F.3d at 688. In *United States v. Owens*, we held that "in making an individualized determination about whether extraordinary and compelling reasons merit compassionate release, a district court may include, *along with other factors*, the disparity between a defendant's actual sentence and the sentence that he would receive if the First Step Act applied." 996 F.3d at 760 (emphasis added). *Owens* acknowledged that under *Tomes* and *Wills*, a sentence disparity would not be sufficient "by itself to constitute an extraordinary and compelling reason for compassionate release," but *Owens* held that those decisions did not "foreclose th[e] middle path" of a district court considering a sentence disparity as one of several factors. *Id.* at 760, 763; *see id.* at 761–63 (collecting cases considering a sentence disparity as one of several factors in the compassionate-release context).

One month later, a divided panel in *United States v. Jarvis* rejected *Owens*. *Jarvis*, 999 F.3d 442, 445 (6th Cir. 2021). Jarvis moved for compassionate release, claiming extraordinary and compelling reasons to grant him relief on the basis of the First Step Act's nonretroactive sentencing changes, COVID-19, his high blood pressure, and his rehabilitative efforts. *Id.* at 444. The court in *Jarvis* refused to consider the nonretroactive sentencing amendments. *Id.* at 443–44. According to the *Jarvis* majority, *Tomes* was "controlling authority that [bound] th[e] panel," making *Owens* a later-issued conflicting decision that the circuit must ignore. *Id.* at 445–46. The *Jarvis* panel attempted to clarify the matter by saying that sentencing disparities under the First Step Act's nonretroactive amendments could not constitute extraordinary and compelling circumstances "by themselves or together with other factors." *Id.* at 445.

Judge Clay dissented in *Jarvis* on the grounds that it improperly ignored *Owens*. Judge Clay argued that *Tomes*'s commentary on whether nonretroactive sentencing provisions could support a finding of extraordinary and compelling circumstances was dicta. *Jarvis*, 999 F.3d at 449 (Clay, J., dissenting). Judge Clay also noted that *Tomes* rejected the significance of the sentencing disparity only after waving away Tomes's other potential extraordinary and compelling circumstances, meaning that *Tomes* evaluated the sentencing disparity solely on its

own, not in concert with other valid extraordinary and compelling circumstances. *Id.* at 450 (Clay, J., dissenting).

Another panel then decided *United States v. Hunter*, which again claimed that *Owens* is not controlling authority. 12 F.4th 555, 564 n.4 (6th Cir. 2021). *Hunter* built upon *Jarvis* in one way that is relevant here: *Jarvis* had said that nonretroactive *amendments to the First Step Act* may not be considered as extraordinary and compelling explanations for a sentence reduction, 999 F.3d at 445, and *Hunter* said that nonretroactive *changes in the law* based on the decision in *United States v. Booker*, 543 U.S. 220 (2005), cannot form an extraordinary or compelling explanation for a sentence reduction, either alone or together with other factors. *Hunter*, 12 F.4th at 564.

We now proceed to the merits of McCall's claim that the district court erred by failing to review his asserted extraordinary and compelling circumstances. McCall raised three extraordinary and compelling circumstances: the presence of COVID-19 in prison, sentencing disparities based on our decision in *Havis*, and his rehabilitation efforts. *See* R. 2143 (Dist. Ct. Denial at 2) (Page ID #17307).

The district court abused its discretion by not considering the disparity in McCall's sentence post-*Havis* along with his efforts at rehabilitation and the presence of COVID-19.[4] *Jones*, 980 F.3d at 1112 (a court abuses its discretion when it "interprets the law to bar it from granting a reduction when, in fact, it has discretion to do so." (quoting *Keefer*, 832 F. App'x at 363)). Under *Owens*, the court could have considered McCall's three factors "in combination" to see if they formed an extraordinary and compelling reason for compassionate release. 996 F.3d at 764.

*Tomes* does not apply. *Tomes* never discussed whether the First Step Act's nonretroactive portions, in concert with other factors, could support a finding of extraordinary and compelling circumstances. Tomes cited two grounds for compassionate release: his asthma, which left him particularly susceptible to COVID-19, and his sentencing disparity post-First Step

---

[4]We assume, along with the government, that the difference between nonretroactive portions of the First Step Act concerning sentencing and nonretroactive changes in sentencing law more broadly is "immaterial." Gov't Br. at 18; *see also Hunter*, 12 F.4th at 564.

Act. *Tomes*, 990 F.3d at 501. The panel upheld the district court's conclusion that Tomes "'did not provide any records in [his] motion to support that [he] has' chronic asthma." *Id.* at 504 (quoting *Elias*, 984 F.3d at 520). It was only then, while raising "[o]ne last point," that *Tomes* held that the First Step Act's nonretroactive portions could not support a motion for compassionate release. *Id.* at 505. But *Tomes* did not discuss whether nonretroactive sentencing disparities could support a compassionate-release motion when combined with other factors. *Owens*, 996 F.3d at 763.

Two other circuits that evaluated *Tomes* agreed with *Owens* that *Tomes* says only that a nonretroactive sentence cannot *alone* serve as the basis for a finding of extraordinary and compelling circumstances—including one court that ultimately followed *Jarvis*. *United States v. McGee*, 992 F.3d 1035, 1048 (10th Cir. 2021) ("[W]e also agree with the Sixth Circuit's decision in *Tomes* that the fact that a defendant is serving a pre-First Step Act mandatory life sentence . . . cannot, standing alone, serve as the basis for a sentence reduction under § 3582(c)(1)(A)(i)."); *United States v. Thacker*, 4 F.4th 569, 575 (7th Cir. 2021) (adopting the *Jarvis* rule, but saying that *Tomes* held that a "nonretroactive change to sentencing law in the First Step Act could not, by itself, constitute an extraordinary and compelling reason for release.").

*Owens* was the first in-circuit case to address the issue of a nonretroactive sentence as one of several factors creating an extraordinary and compelling reason for compassionate release. *Jarvis*, by contravening *Owens*, created an intra-circuit split. Because *Owens* was published before *Jarvis*, *Owens* "remains controlling authority" that binds future panels. *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985). Faced with the conflict between *Owens* and *Jarvis*, courts "must follow the first one[.]" *Jarvis*, 999 F.3d at 445–46. Here, that is *Owens*.

Regarding McCall's discussion of COVID-19, the district court said that "the mere existence of COVID-19 is not enough to warrant a sentence reduction." R. 2143 (Dist. Ct. Denial at 2) (Page ID #17307). We recently held in *United States v. Lemons* that, "when the defendant has access to the COVID-19 vaccine[,]" "a defendant's incarceration during the COVID-19 pandemic . . . does not present an 'extraordinary and compelling reason' warranting a sentence reduction." 15 F.4th 747, 751 (6th Cir. 2021). We added, however, that an

incarcerated person may still show extraordinary and compelling reasons if they are "unable to receive or benefit from a vaccine" in some way. *Id.* (quoting *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021)). The district court's findings here failed to consider whether any facts prevented McCall from receiving or benefitting from a vaccine. As a result, the district court must consider this issue on remand.

The district court correctly held that, if McCall argued for extraordinary and compelling circumstances based on his rehabilitation alone, the district court could not consider the argument. Congress tells us that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); *see Ruffin*, 978 F.3d at 1004. McCall, however, did not cite his rehabilitation alone.

The government argues that a discussion of post-*Havis* considerations may be unnecessary. When McCall pleaded guilty to conspiracy to distribute heroin, the government dismissed a separate heroin distribution charge pending against McCall. R. 1150 (Plea Agreement at 3) (Page ID #8507). *Havis*, which concerned inchoate offenses, did not upset the status of possession with intent to distribute as a sentence-enhancing controlled-substance offense. *United States v. Garth*, 965 F.3d 493, 496–98 (6th Cir. 2020). The government argues that, in light of *Havis*, it "would likely not" agree to dismiss McCall's distribution charge as part of a plea deal, and "would insist that McCall plead guilty to that controlled-substance offense as part of any plea agreement . . . if sentenced today." Gov't Br. at 13–14.

This misunderstands *Havis*. *Havis* held that some prior convictions do not qualify for a career-offender sentence enhancement after an individual is convicted of a given offense. *Havis*'s analysis looks backwards to the convictions that a defendant has received for prior offenses; it does not concern the charges that a defendant currently faces. It is thus irrelevant for *Havis*'s purposes what charges the government could have brought against McCall in connection with this conviction—*Havis* affects only the significance of McCall's prior convictions in determining his status as a career offender. The government offers no analysis concerning whether McCall's earlier convictions still qualify as career-offender predicate offenses post-

*Havis*.[5] McCall, for his part, does not argue the specifics regarding why *Havis* would disqualify his earlier convictions as predicates for career-offender status, saying only that the district court should have considered the issue. McCall Br. at 14.

In light of our concerns with the parties' briefing on the actual impact of *Havis* with respect to McCall's prior state convictions, we believe we should leave the matter initially for the district court to address on remand. We similarly leave for consideration on remand the government's arguments that McCall's offense level, even if adjusted downward, would not be as low as he contends. Gov't Br. at 14 n.2.[6]

Finally, the government argues that the district court never said that it was "*unable*" to consider *Havis*'s changes to the law in its determination of McCall's compassionate-release motion, just that it was "*unwilling*" to do so. Gov't Br. at 8; R. 2143 (Denial of Mot. for Compass. Release at 2) (Page ID #17307). Thus, the government argues by implication that the district court did not abuse its discretion because it did not misapply the proper legal standard, and instead permissibly exercised its discretion to deny a motion for compassionate release.

We read the district court's language to suggest that it thought itself unable to rely on nonretroactive changes in sentencing law. The court said that "changes to sentencing policy" "[are] not enough to warrant a sentence reduction," that it would not "sidestep normal post-conviction requirements" by considering *Havis*'s impact on McCall's sentence, and that this "leaves Defendant's rehabilitation alone as his last hope." R. 2143 (Denial of Mot. for Compass.

---

[5]Ohio has at least two statutes criminalizing drug trafficking, and the government has conceded in the past that convictions under one of them no longer qualify as career-offender predicates post-*Havis*. *United States v. Palos*, 978 F.3d 373, 374–75 (6th Cir. 2020); *see also United States v. Cavazos*, 950 F.3d 329, 337 & n.3 (6th Cir. 2020). The Presentence Investigation Report (PSR) in this case, written before *Havis*, did not state the particular drug-trafficking statutes under which McCall was previously convicted. R. 1250 (PSR at 13–16) (Page ID #9570–73). McCall's felonious assault charge, which he contends is no longer a "crime of violence" for career-offender purposes, R. 2109 (Mot. for Compass. Release at 3) (Page ID #17033), may also no longer qualify as a predicate offense. *United States v. Smith*, 785 F. App'x 330, 333 (6th Cir. 2019); *see United States v. Burris*, 912 F.3d 386 (6th Cir. 2019) (en banc) (addressing Ohio assault statutes). As with McCall's drug convictions, whether his prior assault conviction qualifies as a career-offender qualifier may turn on the specific statutory provision under which he was convicted. *Smith*, 785 F. App'x at 333. The PSR again does not provide the particular statutory offense constituting his assault conviction. R. 1250 (PSR at 13) (Page ID #9570). The district court may consider these issues on remand.

[6]Inappropriate for consideration on remand is the government's argument that U.S.S.G. § 1B1.13 is an "applicable" policy statement for purposes of § 3582(c)(1)(A). Gov't Br. at 11 n.1. We held in *Jones* that it is not. 980 F.3d at 1109.

Release at 2) (Page ID #17307). The district court did not distinguish between its refusal to consider the COVID-19 pandemic and *Havis*'s effect, suggesting that it believed it could give neither of them weight. *Id.* After McCall extensively argued that the district court should consider *Havis*'s effect, R. 2134 (Supp. to Mot. for Compass. Release at 5–9) (Page ID #17215–19), the court's flat refusal to engage with the argument suggests that it viewed itself as unable to consider the argument in determining whether there were extraordinary and compelling reasons to grant compassionate release.

### III.  CONCLUSION

Under our precedents, a court may consider a nonretroactive change in the law as one of several factors forming extraordinary and compelling circumstances qualifying for sentence reduction under 18 U.S.C. § 3582(c)(1)(A). We **REVERSE** the judgment of the district court and **REMAND** for proceedings consistent with this opinion.

_____

**DISSENT**

_____

KETHLEDGE, Circuit Judge, dissenting.  For the district courts in this circuit, our decision in this case renders the law on the issue presented unknowable.  That issue is whether a nonretroactive change in sentencing law can support a finding of "extraordinary and compelling reasons" warranting compassionate release under 18 U.S.C. § 3582(c)(1)(A).  We now have no less than four published decisions—namely, *United States v. Tomes*, 990 F.3d 500 (6th Cir. 2021), *United States v. Wills*, 997 F.3d 685 (6th Cir. 2021), *United States v. Jarvis*, 999 F.3d 442 (6th Cir. 2021), and *United States v. Hunter*, 12 F.4th 555 (6th Cir. 2021)—in which we squarely held that a nonretroactive change in sentencing law cannot support a finding of "extraordinary and compelling reasons" under § 3582(c)(1)(A).  The outlier—and the case the majority insists on following here—is our decision in *United States v. Owens*, 996 F.3d 755 (6th Cir. 2021), in which a divided panel purported to hold that a nonretroactive change in sentencing law *can* support a finding of "extraordinary and compelling reasons" under § 3582(c)(1)(A), so long as the defendant offers at least one other reason in support of that finding (*e.g.*, his rehabilitation). *Id*. at 760.  Movants for compassionate release nearly always do that, so the distinction offered in *Owens* put *Tomes* "into a null set[.]"  *Jarvis*, 999 F.3d at 446.  Meanwhile, *Owens* was published a few weeks before *Jarvis*—which, in the view of the majority here, means that neither *Jarvis* nor *Hunter* is good law on this issue.

The grounds on which *Owens* purported to distinguish *Tomes* were implausible. Factually, the defendant in *Tomes* offered not one but three reasons ("the presence of COVID-19 in prisons," his asthma, and a change in sentencing law, *see* 990 F.3d at 501) in support of his motion for compassionate release—just as in *Owens*.  More to the point, the relevant holding in *Tomes* was legal, not factbound.  Section 401 had reduced the mandatory-minimum sentences for certain drug offenses, which was the change in sentencing law that the defendant invoked there; but under § 401(c) of the Act those reduced sentences were not retroactive.  The *Tomes* court thus held that "we will not render § 401(c) useless by using § 3582(c)(1)(A) as an end run around Congress's careful effort to limit the retroactivity of the First Step Act's reforms."  990 F.3d at

505. As we explained in *Jarvis*, that was a *statutory* holding, which "excluded non-retroactive First Step Act amendments from the category of extraordinary or compelling reasons" within the meaning of § 3582(c)(1)(A). 999 F.3d at 446. Thus, the attempt in *Owens* to find *Tomes* "factually distinguishable[,]" 996 F.3d at 760, was like saying that our interpretation of a statute in a prior case is inapposite—because in this case the facts are different.

What ultimately matters, however, is that the issue presented in these cases is plainly the subject of an intra-circuit split—which is now intractable.