NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0498n.06

No. 21-3010

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
|  | ) | Nov 01, 2021 |
| *Plaintiff-Appellee,* | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
| SAMUEL BUOSCIO, | ) | COURT FOR THE NORTH- |
|  | ) | ERN DISTRICT OF OHIO |
| *Defendant-Appellant.* | ) |  |
|  | ) |  |

Before: BOGGS, WHITE, and READLER, Circuit Judges.

BOGGS, Circuit Judge. Samuel Buoscio appeals the district court's denial of his motion for compassionate release. All parties concede that Buoscio's health conditions, in light of the ongoing COVID-19 crisis, establish extraordinary and compelling circumstances that could permit his release if the district court found that the factors in 18 U.S.C. § 3553(a) weighed in favor of his release. In applying those factors, the district court concluded that Buoscio's risk of recidivism and danger to the community weighed against compassionate release. Because the district court's determination was not an abuse of discretion, we affirm.[1]

---

[1] The government also moves to strike an additional document introduced by Buoscio on the ground that it was not part of the district court record. Because we affirm the district court's decision regardless of whether we consider this additional material, we deny the government's motion as moot.

## I. BACKGROUND

When he filed his motion for compassionate release in 2020, Samuel Buoscio was seventy-five years old and was serving a fifty-seven-month sentence for bank and mail fraud. He also suffered from several health conditions, including hyperlipidemia, hypertension, gastro-esophageal reflux disease, an abdominal hernia, and an enlarged prostate with lower-urinary-tract symptoms. These ailments were severe enough to have required surgeries and rehabilitation services. He was also obese, which placed him at a greater risk of severe illness from COVID-19.

By the time of his motion, Buoscio had been continuously incarcerated for over twenty-eight years. In January 1992, after being charged with homicide, he pleaded guilty to voluntary manslaughter with a firearms specification in Ohio state court and received a sentence of thirteen to twenty-eight years. While serving that sentence in state prison, Buoscio contacted a series of financial institutions, businesses, and individuals, threatening to file lawsuits, producing counterfeit documents to back up false claims, and seeking settlements. *United States v. Buoscio*, 166 F.3d 1215 (Table), 1998 WL 833775, at *1 (6th Cir. 1998) (per curiam). In 1997, a federal jury convicted him on eighty-eight counts of bank fraud, mail fraud, and false statements under 18 U.S.C. §§ 1001, 1341, and 1344. The district court sentenced him to an additional term of fifty-seven months to be served consecutively to his state sentence. *See Buoscio*, 1998 WL 833775, at *1.

In 2007, as he continued to serve his state manslaughter sentence, Buoscio was indicted on two additional counts of forgery in Ohio court, and he pleaded no contest to a single count. He was sentenced to six additional months of imprisonment, to be served consecutively to his other state and federal sentences.

In December 2019, Buoscio's state sentence for the manslaughter conviction ended, and he began to serve his federal sentence. Only months into that period, the COVID-19 virus arrived in federal prisons. Buoscio filed a request for compassionate release, which the warden denied.

On October 19, 2020, Buoscio submitted a pro se motion for compassionate release, citing his medical condition and the pandemic, and requested counsel. The district court then appointed counsel, who submitted a supplement to the compassionate-release motion on December 4. The government opposed the motion. By December 11, 609 inmates and 29 staff members had tested positive for the virus at Buoscio's prison. (As of October 2021, the Bureau of Prisons reported that 634 inmates and 69 staff had recovered, and that one staff member currently tested positive for the virus. *See COVID-19 Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Oct. 25, 2021).)

On December 23, 2020, the district court denied Buoscio's motion for compassionate release. The court recognized that the government had conceded that Buoscio's obesity, age, and health conditions placed him "at a higher risk for suffering serious consequences should he contract COVID-19, and that this creates extraordinary and compelling reasons that could form the basis for compassionate release." However, it noted that it must also "balance all of the §3553 sentencing factors," and that these weighed against release. First, the court found that the record of the offenses that Buoscio committed while incarcerated "shows him to be a high risk for recidivism and indicates that he remains a danger to the community." Second, it explained that, since Buoscio had served approximately twelve months out of his fifty-seven-month federal sentence, release would not reflect the seriousness of his crime and would grant him a disparately low sentence compared to defendants who committed similar offenses. Finally, it noted that even though his health conditions put him at higher risk for complications from COVID-19, they were "under control and appropriately treated" rather than "debilitating."

Buoscio timely appealed. We exercise jurisdiction under 28 U.S.C. § 1291.

## II. ANALYSIS

We review a district court's denial of a motion for compassionate release for abuse of discretion. *United States v. Tomes*, 990 F.3d 500, 502 (6th Cir. 2021). A district court abuses its discretion when it "relies on clearly erroneous findings of fact, uses an erroneous legal standard, or improperly applies the law." *United States v. Flowers*, 963 F.3d 492, 497 (6th Cir. 2020). As part of our review, we consider "the 'whole' record in sentence-modification proceedings, including the records from the original sentencing, records on the modification motion, and the final compassionate release decision." *United States v. Jones*, 980 F.3d 1098, 1112 (6th Cir. 2020).

Under 18 U.S.C. § 3582(c)(1)(A), a court may grant an inmate's motion for compassionate release after: (1) it finds that "extraordinary and compelling reasons warrant such a reduction"; (2) it "consider[s] the factors" in 18 U.S.C § 3553(a); and (3) it determines that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A). We recently clarified that U.S.S.G. § 1B1.13, which concerns compassionate release motions brought by the Director of the Bureau of Prisons, is not an applicable policy statement for inmate-filed compassionate-release motions. *See United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021); *Jones*, 980 F.3d at 1108. Consequently, to grant compassionate release a district court need only find extraordinary and compelling circumstances and conclude, after balancing the § 3553(a) factors, that these weigh in favor of release. *See, e.g.*, *United States v. Westmoreland*, 858 F. App'x 181, 185 (6th Cir. 2021); *United States v. Ruffin*, 978 F.3d 1000, 1008 (6th Cir. 2020) ("We have repeatedly recognized that district courts may deny relief under the § 3553(a) factors even if 'extraordinary and compelling' reasons would otherwise justify relief.").

In this case, the government conceded, and the district court accepted, that Buoscio's health conditions given the ongoing COVID-19 pandemic did present extraordinary and compelling reasons. In light of that concession, our task is only to determine whether the district court abused its

discretion in considering the § 3553(a) factors. These include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need to "reflect the seriousness of the offense"; deter criminal conduct; "protect the public from further crimes of the defendant"; provide the defendant with education, training, medical care, or other treatment; and "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(1), (2), (6).

We have explained that "[d]istrict courts should consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114. As part of this obligation, district courts must provide reasons for their decision and "set forth enough to satisfy the appellate court that [they have] considered the parties' arguments and [have] a reasoned basis for exercising [their] own legal decisionmaking authority." *Id.* at 1113 (quoting *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1964 (2018)). However, a court need not "expressly consider" each of the § 3553(a) factors, so long as it makes clear that it considered the relevant factors and reviewed the whole record. *United States v. Curry*, 606 F.3d 323, 330–31 (6th Cir. 2010).

The district court satisfied those requirements here. It first underscored that Buoscio's fraud and forgery offenses occurred while he was already serving a sentence for manslaughter, and it explained that "[t]his behavior does not support a finding that Mr. Buoscio is inclined to learn from his past behavior, rather it shows him to be a high risk for recidivism and indicates that he remains a danger to the community." *See* 18 U.S.C. § 3553(a)(1), (2)(C). Then, the court considered whether releasing Buoscio after approximately one year of his fifty-seven-month federal sentence would fail to reflect the seriousness of his offenses or create unwarranted sentence disparities among similar defendants, concluding that release would have these effects. *See id.* § 3553(a)(2)(A), (6). Finally, the court noted that despite Buoscio's higher risk of COVID-19

complications, his health conditions "appear to be under control and appropriately treated." *See id.* § 3553(a)(2)(D).

Buoscio maintains that the district court's negative findings rely on stale convictions that it should not have considered, and thus that the denial of his motion is substantively unreasonable. He principally relies on two decisions as support: *United States v. Brissett*, 375 F. App'x 473 (6th Cir. 2010), and *United States v. Amezcua-Vasquez*, 567 F.3d 1050 (9th Cir. 2009). Neither helps his case.

In *Brissett*, we held that a district court reasonably applied the § 3553(a) factors in imposing a within-Guidelines sentence for illegal reentry, when the court had relied on prior convictions for illegal reentry that occurred approximately fifteen and twenty-one years before his most recent arrest. 375 F. App'x at 473, 477–78. For the purposes of argument—but without deciding the issue—we cited *Amezcua-Vasquez* to "assume that the Ninth and Tenth Circuits are correct in holding that the staleness of an enhancing conviction can theoretically render a within-Guidelines sentence substantively unreasonable." *Id.* at 477 (citing *Amezcua-Vasquez*, 567 F.3d at 1054–58, and *United States v. Chavez-Suarez*, 597 F.3d 1137, 1137–38 (10th Cir. 2010)). However, we ultimately concluded that Brissett's sentence was reasonable, because his old convictions "represent[ed] installments in an ongoing pattern of behavior." *Id.* at 478.

Therefore, rather than supporting Buoscio's argument, *Brissett* stands for the proposition that a district court may consider old convictions if they are relevant to its application of the § 3553(a) factors, particularly if those convictions "represent installments in an ongoing pattern of behavior." *Ibid.* And that is what happened here: The district court concluded that Buoscio's commission of additional offenses while incarcerated "does not support a finding that Mr. Buoscio is

inclined to learn from his past behavior" and indicated that he was a recidivism risk and posed a danger to the community.

In *Amezcua-Vasquez*, the Ninth Circuit held that in a sentencing for illegal reentry, a sixteen-level enhancement based on an earlier sentence that the defendant had served more than twenty years prior was substantively unreasonable. 567 F.3d at 1058 (noting that the scope of the decision is "limited" given the "specific set of facts presented by this case"). This out-of-circuit decision is also unavailing for Buoscio. To begin with, Buoscio finished serving his manslaughter sentence in 2019, and he is currently serving his federal sentence for the fraud offenses. While Amezcua-Vasquez's punishments were too old to count under the Sentencing Guidelines' criminal-history provisions, Buoscio's are not. *See United States v. Reid*, 751 F.3d 763, 768–69 (6th Cir. 2014) (explaining that under U.S.S.G. § 4A1.2(e), "a crime counts toward the criminal history score only if it resulted in the defendant's imprisonment 'during any part' of the fifteen years preceding the start of the present offense" (quoting § 4A1.2(e)(1))).

Even if we overlooked the distinct factual context of *Amezcua-Vasquez*, however, our conclusion would not change. The Ninth Circuit determined in that case that a stale conviction did not justify *increasing* a defendant's sentence for unlawful reentry "by the same magnitude irrespective of the age of the prior conviction." *Amezcua-Vasquez*, 567 F.3d at 1055 (emphasis omitted). However, the court accepted that "it may be reasonable to take *some* account of an aggravated felony, no matter how stale." *Ibid.* In other words, *Amezcua-Vasquez* condemns unreasonable increases in sentences based on old convictions but accepts consideration of old convictions that are relevant to balancing the § 3553(a) factors.

The district court acted within those bounds when it denied the compassionate-release motion here. Rather than referring to old, irrelevant convictions in order to increase Buoscio's

sentence, the court maintained Buoscio's current sentences, while considering his past convictions as relevant indicators of Buoscio's recidivism risk and danger to the community. This was not an abuse of discretion.

Buoscio next argues that the district court abused its discretion by relying on the fact that he had only served a portion of his sentence. As support, he points to a number of district-court decisions granting compassionate release to inmates who have served only small portions of their sentences. *See United States v. Kelley*, 464 F. Supp. 3d 1134, 1135 (N.D. Cal. 2020) (less than five years of ten-year sentence); *Miller v. United States*, 453 F. Supp. 3d 1062, 1064 (E.D. Mich. 2020) (approximately two years of six-year sentence); *United States v. Grubbs*, No. CR16-228, 2020 WL 3839619, at *1 (W.D. Wash. July 8, 2020) (less than three years of nine-year sentence); *United States v. Common*, No. 17-cr-30067, 2020 WL 3412233, at *1 (C.D. Ill. June 22, 2020) (approximately 16 months of a 120-month term). While we do not question these decisions as permissible uses of discretion, the district court here did not abuse its discretion by making a different judgment on these facts. Our role on appeal is ultimately to ensure that a district court's "decisions are *reasoned* decisions." *Jones*, 980 F.3d at 1116 (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)); *see also United States v. Keefer*, 832 F. App'x 359, 363 (6th Cir. 2020) (recognizing that the district court "is best situated to balance the § 3553(a) factors" but that its "judgment is to be guided by sound legal principles") (citations omitted). And though two cases may share some facial similarities, they may produce divergent—but equally well-reasoned—results.

Finally, Buoscio faults the district court for failing to give weight to his rehabilitation, as evidenced by his lack of disciplinary infractions in either state or federal prisons since 2012. This information, however, was apparently available in the record before the court. The fact that the court did not expressly mention Buoscio's disciplinary record did not mean that it failed to consider

Buoscio's arguments. "[B]usy district courts do not abuse their discretion in this context merely because they do not issue exhaustive opinions." *Keefer*, 832 F. App'x at 363 (citing *Chavez-Meza*, 138 S. Ct. at 1967–68). We are not persuaded that the district court failed to consider this information. And it was well within the bounds of the court's discretion to conclude that, despite evidence of Buoscio's lack of recent bad behavior in prison, other evidence pointing to his likelihood of recidivism and danger to the community weighed against his release.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's decision.