**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,<br><i>Plaintiff-Appellee,</i><br><br>v.<br><br>GEORGE FOWER, AKA Hisham Fehmi Faour, AKA George Tyler Fower,<br><i>Defendant-Appellant.</i></td><td>No. 21-50007<br><br>D.C. Nos.<br>8:19-cr-00163-JVS-1<br>8:19-cr-00163-JVS<br><br><br>OPINION</td></tr>
</table>

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted January 10, 2022
Pasadena, California

Filed April 4, 2022

Before: Johnnie B. Rawlinson and Consuelo Callahan,
Circuit Judges, and Frederic Block, District Judge.[*]

Opinion By Judge Block

---

[*] The Honorable Frederic Block, United States District Judge for the Eastern District of New York, sitting by designation.

**SUMMARY**[**]

**Criminal Law**

Affirming the district court's denial of a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the panel held, as a matter of first impression in this circuit, that compassionate relief is not available to defendants prior to incarceration.

**COUNSEL**

Daniel DeMaria (argued) and Aaron Spolin, Spolin Law PC, Los Angeles, California, for Defendant-Appellant.

Daniel S. Lim (argued), Assistant United States Attorney; Bram M. Alden, Chief, Criminal Appeals Section; Tracy L. Wilkison, Acting United States Attorney; United States Attorney's Office, Santa Ana, California; for Plaintiff-Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

BLOCK, District Judge:

George Fower appeals the denial of his motion for compassionate release.[1] The district court denied the motion because he was not then in custody and had failed to exhaust his administrative remedies. We affirm and hold, as a matter of first impression in the Ninth Circuit, that compassionate relief is not available to defendants prior to incarceration.[2]

**THE APPLICABLE STATUTE**

As relevant to this case, 18 U.S.C. § 3582(c)(1)(A) provides that:

---

[1] The relief sought by Fower is referred to as both "compassionate release" or "compassionate relief." Neither term is expressly used by Congress in the statute. While Fower's motion uses the more common "compassionate release" nomenclature, we find the term "compassionate relief" more appropriate given the non-custodial context of this case.

[2] Several district courts have addressed the issue with mixed results. *See United States v. Picardo*, No. CR 19-401 (SRC), 2020 WL 6501730, at *2 (D.N.J. Nov. 5, 2020) ("[T]he entire scheme of the provision contemplates that the defendant seeking relief has already begun serving his or her sentence."); *United States v. Verasawmi*, No. CR 17-254 (FLW), 2021 WL 2549303, at *5 (D.N.J. June 22, 2021) (holding defendant must be in custody); *contra United States v. Hussain*, No. 16-CR-00462-CRB-1, 2020 WL 5910065, at *3 (N.D. Cal. Oct. 6, 2020) ("[Section 3582(c)(1)(A)] requires a defendant to exhaust his administrative rights before moving for relief; it does not expressly require a defendant to exhaust those rights while in custody."); *United States v. Hambrock*, 520 F. Supp. 3d 827, 830 (E.D. Va. 2021) ("Nothing in the plain language of the statute requires the defendant to be in custody presently or to have served any portion of his sentence.").

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

## FACTUAL AND PROCEDURAL HISTORY

On October 7, 2019, Fower pleaded guilty to a single-count information charging wire fraud, in violation of 18 U.S.C. § 1343. His crime resulted in victim losses of more than $1.2 million. On February 10, 2020, the district court sentenced him to 24 months' imprisonment. With the government's consent, Fower was allowed to self-surrender to the Bureau of Prisons (the "BOP").

Fower claims that he suffers from "serious and pre-existing medical conditions," including upper respiratory

issues and bronchitis, that make him "uniquely susceptible" to COVID-19.  These conditions, he argues, entitle him to compassionate relief.

Mindful that the statute requires a defendant to exhaust his administrative remedies before seeking redress from a district court, Fower first sought relief from the BOP: On April 28, 2020, he sent a letter to the warden of Herlong Federal Correctional Institution ("Herlong Warden"),[3] where U.S. Marshals indicated he would be incarcerated. On April 29, 2020, he sent a letter to the BOP's Designation and Sentence Computation Center. In both letters, Fower attached medical documentation. On October 16, 2020, he sent a letter to the BOP's Regional Director for the Western Region ("Regional Director"). That letter enclosed his previous submissions to the Herlong Warden. Finally, on November 27, 2020, Fower sent a letter to the BOP's Office of General Counsel, attaching his letter and submissions to the Regional Director. He did not receive a response to any of his letters. All this time, Fower remained at liberty.

On December 28, 2020, while still not in custody, Fower filed his motion for compassionate release. He argued that because he was "at serious risk of death if he contract[ed] the virus . . . he warrant[ed] a sentence reduction to home confinement or time served."

The district court did not agree. On January 4, 2021, it issued a brief order denying Fower's motion for three reasons: first, the court concluded that "[c]ompassionate

[3] Although Fower was "advised by the U.S. Marshals service that [he would] self-surrender at FCI Herlong," Fower Br. at 18, the advice he received was incorrect: he is currently incarcerated at Lompoc Federal Correctional Institution. Results for "George Fower," FIND AN INMATE, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/.

relief is not available to a defendant not in custody;" second, Fower had not exhausted his administrative remedies, and "[e]xhaustion is a statutory requirement for the grant of relief;" and third, compassionate relief in Fower's case would not be consistent with the § 3553(a) sentencing factors and "would ill serve justice in the context of a million-dollar fraud."[4]

## DISCUSSION

A district court's denial of a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) is reviewed for abuse of discretion. *United States v. Aruda*, 993 F.3d 797, 799 (9th Cir. 2021). "A district court abuses its discretion if it fails to apply the correct legal standard or if its application of the correct standard is 'illogical, implausible, or without support in inferences that may be drawn from facts in the record.'" *United States v. Estrada*, 904 F.3d 854, 862 (9th Cir. 2018) (quoting *United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc)).

The statutory text and the history predating the enactment of the statute reveals that the district court correctly held that a convicted defendant is not entitled to seek statutory compassionate relief prior to incarceration.

## A.  The Text

The structure and terminology of the statute reflects that only defendants in custody are eligible for relief. In providing that the court "*may reduce the term of imprisonment* . . . that does not exceed the *unserved portion*

---

[4] Although an alternative holding, the record clearly supports that conclusion.

*of the original term* of imprisonment," the text presupposes that a defendant would be in custody before the *unserved portion* of his term can be reduced. 18 U.S.C. § 3582(c)(1)(A) (emphasis added). Plausibly, a defendant's *unserved portion* can only be reduced if his term of incarceration has commenced.

Probative also is the decision of the Supreme Court in *Dillon v. United States*, 560 U.S. 817, 821–22 (2010). There the Court was faced with the issue of whether a sentence modification and reduction below the revised sentencing guidelines authorized by Congress for crack cocaine convictions was statutorily warranted under 18 U.S.C. § 3582(c)(2), "the compassionate release provision's neighbor." *United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020). In answering the question in the negative, the Court made clear that the terms "modification" and "reduction" were sharply limited, stating "that Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *Dillon*, 560 U.S. at 826.

In asking for "home confinement or time served" the defendant is seeking to avoid prison, which strikes us as more akin to a plenary resentencing proceeding. Although under § 3582(c)(1)(A) the district court does have discretion to decide that probation or supervised release may be appropriate compassionate relief remedies, the "limited adjustment" rationale under *Dillon* supports our holding that Congress did not intend to broaden compassionate relief to convicted defendants not yet in prison.

## B. The History

In *Jones*, 980 F.3d at 1103–04, the Sixth Circuit cogently traced the statute's history. As it aptly explained, the

statute's origin traces to the Sentencing Reform Act of 1984, in which Congress abolished federal parole and forbade federal courts from modifying a term of imprisonment once it was imposed, with one exception: embracing the concept of compassionate relief, the courts could reduce a sentence when "warrant[ed]" by "extraordinary and compelling reasons[.]" 18 U.S.C. § 3582(c)(1)(A).

But for the 34 years between the passage of the Sentencing Reform Act of 1984 to the passage of the First Step Act of 2018, only the Director of the BOP could initiate the requisite judicial motion.[5] However, the Director rarely did. For example, as recounted in *Jones*, "[t]he BOP approved only 6% of 5,400 compassionate release applications received between 2013 and 2017." 980 F.3d at 1104. And although the statutory text allowed for relief if "extraordinary and compelling reasons" warranted, the BOP principally brought compassionate relief petitions on behalf of inmates suffering from terminal illness. *See* Michael Doering, *One Step Forward: Compassionate Release Under the First Step Act*, 2020 WIS. L. REV. 1287, 1294 (2020). Moreover, the BOP's administration of the compassionate relief system was slipshod at best: the Inspector General of the Department of Justice found that it had no formal timeliness standards, did not adequately inform inmates about the program, and had no system to track inmates' requests for consideration. U.S. Dep't of Justice, Office of

---

[5] A motion from the BOP was required as early as 1976, when Congress enacted a predecessor statute to the modern compassionate relief regime. That statute, which was codified at 18 U.S.C. § 4205(g), survived for eight years until it was replaced in 1984 by the Sentencing Reform Act.

the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* (Apr. 2013).

"Frustrated with the BOP's conservative approach, a bipartisan coalition in Congress sought to boost grants of compassionate release by reforming § 3582(c)(1)(A)'s procedures in the First Step Act of 2018."[6] *Jones*, 980 F.3d at 1104. It did this by affording the defendant the right to directly seek such judicial relief, with one caveat: the BOP first had to be given the opportunity to do so; only if it failed to act within thirty days could the defendant initiate the requisite motion.

However, the "First Step Act amended *only* in the manner just noted—i.e., allowing a prisoner, rather than requiring BOP, to be the movant—but did not amend *any other* language in § 3582(c) or *any other* component of the overall compassionate release legal framework as it existed before the First Step Act became law. That framework . . . includes a matrix of statutory and other enactments forging a relationship among the Court, the Sentencing Commission and BOP." *United States v. Haynes*, 456 F.Supp. 3d 496, 507 (E.D.N.Y. 2020).

At no time in the history of the "matrix of statutory and other enactments," *id.*; implicating the BOP, were the BOP's powers ever extended to grant it jurisdiction over those who had yet to commence their incarceration. To permit it to now do so would be a marked departure from the limited, although significant, broadening of the First Step Act.

---

[6] "First Step" is a backronym for a prolix title: the "**F**ormerly **I**ncarcerated **R**eenter **S**ociety **T**ransformed **S**afely **T**ransitioning **E**very **P**erson" Act. First Step Act of 2018, H.R. 5682, 115th Congress (2018).

Moreover, it makes sense that the BOP has no place to play in the compassionate relief world prior to a prisoner's incarceration. The present case is a good example. Fower apparently sought such relief prior to his designation to a particular BOP facility and attempted to satisfy the First Step Act's exhaustion requirement by writing to the warden of the facility to which he thought he might be designated. But until there is a formal BOP designation, it would be a matter of guesswork, as here, as to which warden should be the recipient of the compassionate relief request. Indeed, the statute states that the defendant's request must be addressed to "the warden of defendant's facility," which cannot be known until there has been a designation by the BOP. This is further evidence that the statute contemplates that the defendant must be in a BOP facility before qualifying for compassionate relief.

All this compels the conclusion that when considering the text of the current iteration of the compassionate relief statute and the statute's history, a convicted defendant must be incarcerated before he may seek such relief.

Our holding does not mean that a district court is powerless to provide a semblance of compassionate relief in the normal exercise of its broad discretion. If the circumstances warrant, a district court may delay the imposition of sentence or extend the time to surrender to the BOP, as the district court did in this case. *See United States v. Gregory*, No. 17-20079-JAR-1, 2021 WL 1978630, at *4 (D. Kan. May 18, 2021) (delaying self-surrender of ill defendant); *United States v. Aldridge*, No. CR 19-20651-1, 2021 WL 1720900 (E.D. Mich. May 1, 2021) (same).

## CONCLUSION

The district court's order denying the defendant's motion for compassionate release is **AFFIRMED**.